UNITED STATES of America, Plaintiff,

v.

Billy Ray LEE, Defendant (two cases).

Nos. CR-2-76-18 and CR-2-76-24.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Dec. 28, 1976.

John L. Bowers, U. S. Atty. and Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

John F. Dugger and Herbert M. Bacon, Bacon, Dugger & Jessee, Morristown, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

These two actions are criminal prosecutions involving the cumulative conduct of the same person which was consummated at the same time and place. The defendant Mr. Lee had been convicted earlier of a crime punishable by imprisonment for a term exceeding one year. On January 17, 1974, while attempting to board within this district an aircraft being operated by an air carrier for air transportation purposes, it was discovered that he had about his person and in a briefcase a concealed deadly or dangerous weapon. Of course, he " * * * could not very well possess the firearm without receiving it. * * * " *United States v. Brown*, C.A. 6th (1973), 472 F.2d 1181, 1182.

Mr. Lee was arrested on the day after upon a complaint charging him with having attempted to board an aircraft being operated by an air carrier in air transportation while having about his person a concealed deadly or dangerous weapon, while he was not serving as a law enforcement officer of any municipal or state government or the federal government and authorized or required to carry arms, and while he was not so authorized under regulations issued by the Federal Aviation administrator, in violation of 49 U.S.C. § 1472(*l*) (as it existed on that date). Such minor offense was then punishable by fine of $1,000 or less or imprisonment for one year or less, or both such fine and imprisonment. *Idem.*

Mr. Lee was tried under that complaint on February 1, 1974. He was found guilty, convicted and sentenced thereon on March 22, 1974 by a United States magistrate. "In all cases of conviction by a United States magistrate an appeal of right shall lie from the judgment of the magistrate to a judge of the district court of the district in which the offense was committed. * * * " 18 U.S.C. § 3402.

Mr. Lee exercised such statutory right of appeal on April 22, 1974, Rule 8(a), Magistrates' Rules. A judge of this Court reversed such judgment of conviction and remanded the action to such magistrate for proceedings consistent with its opinion therein of June 20, 1974. *United States v. Lee*, D.C.Tenn. (1974), 383 F.Supp. 1033.

A second magisterial trial was conducted more than one year afterward, on July 11, 1975. Upon the same evidence, Mr. Lee was again found guilty, convicted and resentenced under such complaint. Again, Mr. Lee exercised his aforementioned statutory right of appeal from that judgment, and it was affirmed by a judge of this Court. Mr. Lee then had a procedural right to appeal from the final judgment of conviction of this Court. *Coppedge v. United States* (1962), 369 U.S. 438, 441–442, 82 S.Ct. 917, 8 L.Ed.2d 21, 26 (headnote 3). He exercised this right, and the judgment of his conviction was reversed on such appeal. *United States v. Lee*, C.A. 6th (1976), 539 F.2d 606.

Such judgment of the appellate court was issued as a mandate to this Court on September 15, 1976 and was received in the office of our clerk on September 17, 1976. In less than one month thereafter, on October 13, 1976, an indictment was returned against Mr. Lee by a grand jury in no. CR–2–76–18, charging him, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, of having received on or about January 17, 1974 in the jurisdiction of this Court a certain firearm which had been shipped in

and transported interstate commerce. 18 U.S.C. § 922(h)(1). Whoever commits such a crime as is most recently alleged against Mr. Lee shall be fined not more than $10,-000 or imprisoned for not more than 10 years, or both. 18 U.S.C. § 924(a).

The defendant Mr. Lee moved for a dismissal of the indictment returned against him on the more serious charge in no. CR–2–76–18. He claims, inter alia, that he will be denied due process of law, Constitution, Fifth Amendment, by being prosecuted on a charge of having committed a felony as punishment for having exercised his statutory and procedural rights to appeal his conviction on the aforementioned misdemeanor charge.

■ It is not the process of law which is due any person in this country, if that person is caused by his national government to be charged with a lesser criminal offense and afterward that lesser charge is caused to be raised to a more serious criminal offense, because that person exercised any constitutional, common-law, statutory or procedural right he enjoys in connection with the prosecution of such lesser offense. *United States v. Ruesga-Martinez,* C.A. 9th (1976), 534 F.2d 1367, 1369[1]; *United States v. Jamison* (1974), 164 U.S.App.D.C. 300, 505 F.2d 407, 413–414[7]; see also *Blackledge v. Perry* (1974), 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (holding that a person convicted of an offense by a state with a two-tier system of criminal trials is entitled to pursue his statutory right to a trial de novo, without apprehension that such state will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential of incarceration).[1]

■ The rule just stated clearly does not apply if the prosecution shows that it was impossible to proceed on the more serious charge at the time of trial on the lesser charge, *ibid.,* 417 U.S. at 28–29, 94 S.Ct. at 2102–2103, 40 L.Ed.2d at 635[5]; or if, through no fault of its own, the government does not learn of new evidence of which it was excusably unaware until after the lesser charge was brought, *United States v. Jamison, supra,* 505 F.2d at 416–417. In addition, from *Blackledge, supra,* it is inferable that there might be other circumstances or intervening events which would justify the prosecution's escalation of an initial criminal charge. *Ibid.,* 505 F.2d at 417; *cf.* also *United States v. Preciado-Gomez,* C.A. 9th (1976), 529 F.2d 935, 939[2], certiorari denied (1976), 425 U.S. 953, 96 S.Ct. 1730, 48 L.Ed.2d 197. However, in such event, the reason for any increase in the charge and the factual bases to support it " * * * must be made a part of the record at the time the higher indictment is filed with the court. * * * " *United States v. Jamison, supra,* 505 F.2d at 416[9].

■ There can be no question herein that the change from a minor misdemeanor complaint in no. CR–2–76–24[2] to a felony indictment in no. CR–2–76–18 " * * * constitutes an increase in * * * " the charge against Mr. Lee. *Cf. United States v. Ruesga-Martinez, supra,* 534 F.2d at 1369, n. 1. The prosecution bears a heavy burden of proving that the increase in the severity of the charge it sought and obtained against him, after he had exercised thrice his rights of appeal successfully in relation to the misdemeanor charge, was not motivated by prosecutorial vindictiveness. *Ibid.,* 534 F.2d at 1369[1].

The indictment in no. CR–2–76–18 is predicated admittedly on the same ultimate

---

1. Mr. Justice Stewart pointed-out that, " * * if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanor pursues his statutory remedy—the State can insure that only the most hardy defendants will brave the hazards of a de novo trial. * * * " *Ibid.,* 417 U.S. at 27–28, 94 S.Ct. at 2102, 40 L.Ed.2d at 634.

2. Although the later and more serious charge against Mr. Lee, no. CR–2–76–18, bears a lower docket number in this Division of the Court, than does the earlier and less serious charge, no. CR–2–76–24, this is because the earlier and less severe charge was transferred to this Division from our Northern Division *after* a grand jury had returned an indictment against Mr. Lee in no. CR–2–76–18.

acts as was the complaint against Mr. Lee in no. CR–2–76–24. " * * * Such attempt to retry [him], seeking a heavier penalty *for the same acts* [emphases in the original] as originally charged, is inherently suspect, and in such cases the burden is justifiably placed on the government to show a valid reason (such as newly discovered evidence of other acts) for an increase in punishment. If such reason, or other valid reasons exist, the courts should refrain from interfering with the prosecutor's right to exercise his discretion to press or not press [the] more serious [charge]. * * * " *United States v. Preciado-Gomez, supra,* 529 F.2d at 939[2].

While the prosecutors herein failed to make a part of the record in no. CR–2–76–18, at the time the indictment herein was filed, the reason for the increase in the charge against Mr. Lee and the factual bases to support it, in this instance, the Court will consider whether, *de hors* such record, the prosecution has shown a valid reason for seeking the more severe charge therein. This is because the procedure mandated by the *Jamison* court, *supra,* is unfamiliar and has not been adopted by the Court of Appeals for the Sixth Circuit.

The first such consideration is whether it was " * * * impossible * * * " to proceed on the more serious charge at the time of trial on the lesser charge. It may have been at the time of the *first* magisterial trial of the defendant on February 1, 1974, because of the undeveloped state of the decisional law at that time. Dictum in *United States v. Bass* (1971), 404 U.S. 336, 342–343, 92 S.Ct. 515, 30 L.Ed.2d 488, 494 (and n. 10 to which reference was made therein) had indicated that the Supreme Court might rule that the felony charge involved, *viz.,* under 18 U.S.C. § 922(h), does not proscribe the *intra* state receipt by a convicted felon of a firearm but is limited to the (sending or) receiving of firearms as part of an *inter* state transportation. As the prosecuting attorney only had at the time of arrest evidence of Mr. Lee's *intra* state *receipt* of such firearm, he had requested an agent of the Federal Bureau of Investigation (which was charged statutori-

ly with investigating violations of former 49 U.S.C. § 1472(*1*), see 49 U.S.C. § 1472(n)), on January 18, 1974 to attempt to trace the weapon " * * * to see it was one which had been transported in interstate commerce subsequent to the enactment of the Gun Control Act of 1968, * * * " 18 U.S.C. §§ 921, et seq.

Another problem confronting the prosecutor initially was proving that Mr. Lee had committed the felony offense of receiving such weapon within this District under prohibited circumstances. Rule 18, Federal Rules of Criminal Procedure. Venue could be established in this district if testimony or other evidence was obtained and offered which would justify the reasonable inference that the violation had occurred in this district. *United States v. Walker,* D.C. Tenn. (1973), 384 F.Supp. 262, 263[3] (relating to receiving stolen property in this district). Mr. Lee testified in his trial of February 1, 1974 that he received the weapon in question within this district.

The prosecuting attorney received on March 11, 1974 the report of the investigating officers, reflecting that the pistol had in fact been transported in interstate commerce. Thus, the nexus then considered to be required could have been established through probative evidence. Although Mr. Lee had not on that date been found guilty, convicted and sentenced as a result of his first magisterial trial, it is doubtful that the prosecuting attorney could have obtained a dismissal of such misdemeanor-complaint at that juncture without the consent of Mr. Lee.

█ The Federal Rules of Criminal Procedure apply as to such minor offenses to the extent that trial procedure and practice are not covered specifically by the Magistrates' Rules. Rule 1, Magistrates' Rules. The prosecuting attorney could not have obtained leave of the magistrate to file a dismissal of the misdemeanor complaint and terminate the prosecution thereupon " * * during the trial without the consent of the defendant." Rule 48(a), Federal Rules of Criminal Procedure. The trial continued

until the magistrate had determined the issues, entered his judgment, *cf. Smith v. McCool* (1873), 83 U.S. (16 Wall.) 560, 21 L.Ed. 324, 325, and sentenced the defendant, *United States v. Doe*, D.C.Conn. (1951), 101 F.Supp. 609, 612[11]. Having been placed in jeopardy by the commencement of the trial before the magistrate, it is doubtful that Mr. Lee would have consented to a dismissal of the complaint without prejudice and chanced the government's undertaking to indict him successfully on the felony charge. *Cf. Woodring v. United States*, C.A. 8th (1963), 311 F.2d 417, 423–424[5], certiorari denied (1963), 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414.

When the judgment of conviction by the magistrate was reversed by a judge of this Court on June 20, 1974, however, it was not then " * * * impossible * * * " for the prosecutor to proceed by indictment against Mr. Lee on the more serious charge. That opportunity remained open from that date for over one year until the second magisterial trial of Mr. Lee on the misdemeanor complaint on July 11, 1975. Before such second trial commenced, the magistrate would have been powerless to compel the further prosecution of Mr. Lee under the complaint. Advisory Committee Note on Rule 48, *supra*. " * * * Discretion to prosecute remain[ed] with the prosecutor. Confiscation Cases, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1869). * * * " *United States v. De Diego* (1975), 167 U.S.App.D.C. 252, 511 F.2d 818, 824[15].

Furthermore, on the preceding October 18, 1974, the Court of Appeals for the Sixth Circuit had laid to rest the question, whether proceeding against Mr. Lee by felony indictment " * * * in this Circuit * * * " was precluded by the aforementioned dictum in *Bass, supra*. *United States v. Barrett*, C.A. 6th (1974), 504 F.2d 629, affirmed (1976), 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450. The prosecutor could have safely relied on that decision from our

Court of Appeals without awaiting any certiorari action. This District Court was bound by that decision of the Court of Appeals for the Sixth Circuit. *Cf. Lewis v. Rockefeller*, C.A. 2d (1970), 431 F.2d 368, 371[2].

The second consideration is whether, through no fault of its own,[3] the government did not learn of the existence of new evidence of which it was excusably unaware until after the complaint charging the lesser offense was issued. As stated, with reference to the previous issue considered, when the misdemeanor-complaint was issued on January 17, 1974 against Mr. Lee, the prosecution lacked evidence of all the elements essential to seeking the felony-indictment. " * * * [T]he burden [was] on the government to prove all the necessary elements of the crime. * * * " *United States v. Collier*, C.A. 6th (1967), 381 F.2d 616, 619[5], certiorari denied (1968), 390 U.S. 1043, 88 S.Ct. 1639, 20 L.Ed.2d 304. Receipt of the pistol was one of these. *Cf. Hyland v. Fukuda*, D.C.Hawaii (1975), 402 F.Supp. 84, 88[1]. But, when the prosecution had learned of evidence that the gun had traveled previously in interstate commerce and that Mr. Lee, a convicted felon, had received it within this district thereafter, the evidence was sufficient to state a felony claim to a grand jury of his violation of the National Firearms Act. *Cf. United States v. Wolf*, D.C.Mo. (1975), 405 F.Supp. 731, 732–733[2]. Beyond that later date, the unawareness of the prosecutor of essential evidence ceased constituting any reason for his failure to seek a felony indictment against Mr. Lee.

The final element in this consideration is whether the government has shown other circumstances or intervening events which would justify the prosecution's escalation of the initial misdemeanor complaint against Mr. Lee into a felony indictment. There are none for which the prosecution is not responsible.

---

**3.** It is somewhat incongruous with its copious keeping of official records and the availability to its agencies of computerized, electronic equipment that government investigators could not have ascertained before March 11, 1974 and after January 17, 1974 that the Smith & Wesson pistol found in Mr. Lee's possession on that date (and available to the investigators thereafter) had moved theretofore in interstate commerce.

For the benefit of those who may contend that Mr. Lee is being freed of a felony indictment " * * * on a technicality * * *", it must be remembered that constitutional due process of law is the controlling issue. " * * * [T]he evil to which [*North Carolina v.*] *Pearce* [(1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656] is directed is the *apprehension* [emphasis in the original] on the defendant's part of receiving a vindictively-imposed penalty for the assertion of rights. * * * " *United States v. Jamison, supra,* 505 F.2d at 415. " * * * [D]ue process * * * requires that a defendant be freed of apprehension of such a retaliatory motivation * * * " on the part of his prosecutors. *Blackledge v. Perry, supra,* 417 U.S. at 28, 94 S.Ct. at 2102, 40 L.Ed.2d at 634[4].

Mr. Justice Stewart found in *Blackledge, supra,* " * * * the central figure [here] is not the judge or the jury but the prosecutor. * * * " *Ibid.,* 417 U.S. at 27, 94 S.Ct. at 2102, 40 L.Ed.2d at 634. In the instant *sub judice,* the central figures are the officials collectively of the United States Department of Justice, Criminal Division, Washington, D. C. (Washington).

"Except as otherwise authorized by law the Attorney General shall supervise all litigation to which the United States * * * is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys * * * in the discharge of their respective duties." 28 U.S.C. § 519; *United States v. Jacinto Tin Co.* (1888), 125 U.S. 273, 279, 8 S.Ct. 850, 31 L.Ed. 747, 749 (headnote 2); *Hogg v. United States,* C.A. 6th (1970), 428 F.2d 274, 278[2], certiorari denied (1971), 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808. "Except as otherwise authorized by law, the conduct of litigation to which the United States * * *

is a party * * * is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. Because of the exercise of this authority, Washington is the "prosecutor" of Mr. Lee herein.

Immediately the choice devolved upon the United States attorney of this district and his assistants to decide whether to proceed against Mr. Lee under a misdemeanor-complaint or under a felony-indictment for his aforedescribed consummated acts, one such assistant inquired of Washington whether, pending the aforementioned search for new evidence, Mr. Lee could be proceeded against at once by misdemeanor-complaint, with such complaint to be dismissed if the new evidence were forthcoming and a felony-indictment was in prospect. Washington advised he could, " * * * if facts were developed to support * * * " the more severe charge.[4] The misdemeanor-complaint was thereupon sought, obtained and prosecuted.

After Mr. Lee was convicted and sentenced in his first magisterial trial, such assistant continued contemplation of seeking a felony-indictment against him before a grand jury. The assistant renewed his contact with Washington, and on April 16, 1974 Washington refused permission for a felony-indictment to be sought. Upon learning of this development, the FBI agent investigating these matters, advised such assistant on May 22, 1974 that he (the investigator) would seek the desired permission.

 Mr. Lee's counsel suggested on August 29, 1974 the possibility of his client's engaging in plea-bargaining.[5] This possibility was rejected by the United States attorney of this district on September 5, 1974.

---

4. Of course, if such facts were not discovered in the pending investigation, the seeking of a felony-indictment against Mr. Lee would have been wholly unwarranted.

5. Had Mr. Lee engaged in such bargaining and then reneged on it, the prosecuting attorneys could properly have brought a heavier charge against him. *United States v. Preciado-Gomez, supra,* 525 F.2d at 939; *United States v.*

*Gerard,* C.A. 9th (1974), 491 F.2d 1300, 1305–1306. Merely because the prosecutor was authorized to engage in plea bargaining, *cf. Brady v. United States* (1970), 397 U.S. 742, 751, n. 8, 90 S.Ct. 1463, 25 L.Ed.2d 747, 758, did not result in an inherent power of the prosecution to adjust the charge against Mr. Lee at will. *United States v. Ruesga-Martinez, supra,* 534 F.2d at 1370–1371[4].

Expressing his belief that " * * * we were *once again* [after the reversal of Mr. Lee's judgment of conviction of the lesser charge by the Court of Appeals for the Sixth Circuit on August 23, 1976] in the same status * * * as we were prior to trial of the misdemeanor charge on February 1, 1974 [by the magistrate] * * *", the assistant prosecutor again requested the permission of Washington to seek an indictment against Mr. Lee on the felony charge.

This precipitated a conference among the pertinent legal talent in the Washington bureau, and the requested permission to take the felony matter to a grand jury was again rejected. Significant to the present consideration is the fact that one of those conferees was reported to fear that the prosecution of Mr. Lee on a felony charge, after the reversal of the appellate court of his conviction on the misdemeanor charge, if a conviction of the greater charge did result, would itself result in another reversal on the ground that the felony indictment " * * * was *an effort by the federal government to punish Bill Ray Lee for exercising his right to appeal the misdemeanor conviction* ! * * * " That comment was prophetic, except that Mr. Lee's conviction on the greater charge and an appeal are not necessary to achieve that result in this Court. Notwithstanding, on August 25, 1976, Washington advised the local prosecuting attorney that Washington had been in error in the earlier conclusion as to the bar of double jeopardy, that the office of the United States attorney in this district should " * .* * do what our office wanted to do, * * * " and that there was no authority extant for Washington to have given the direction it had given local authorities as to this matter.

Counsel for Mr. Lee reopened the possibility of plea bargaining on September 21, 1976; but, on October 12, 1976, such counsel advised a United States magistrate of this district that Mr. Lee would consent again to a (third) trial before a magistrate on the lesser charge in no. CR–2–76–24. Before such consent form [6] was executed, the indictment in no. CR–2–76–18 was sought by the prosecutor from, and returned by, a grand jury. Two days after the filing of such indictment, Mr. Lee elected instead to be tried on the misdemeanor charge by a judge and jury in this Court, a choice he had been accorded by such appellate court. Thereupon, no. CR–2–76–24 was transferred to this division.

From all the foregoing, the Court finds no additional circumstances or any intervening events which justified the prosecuting authorities' escalating herein the charge against Mr. Lee and subjecting him to the potential of greater punishment for having committed the same consummate acts. In sum, the Court further finds that the burden which Washington bears, of proving that the increase in the severity of the charge against Mr. Lee it sought and obtained at the hands of a grand jury was not motivated by prosecutorial vindictiveness, has not been borne successfully.

■ There is some evidence of vindictive motivation on the part of the local United States attorney and Washington herein. After the indictment had been returned against Mr. Lee in no. CR–2–76–18, the former stated to defense counsel: " * * * I bet you wish you had let him [Mr. Lee] pay the $1,000 fine [assessed against him in the first magisterial trial, *supra*,] and not have appealed. * * * " To the Court, this implies that the prosecuting attorney of this district was stating, in effect: "Aha! you appealed your client's conviction of a misdemeanor and a $1,000 fine and suspended jail sentence; because you didn't 'let well-enough alone' and took an appeal, I've 'gotcha' by 'upping-the-ante', and now your client's got to face a felony indictment and greater punishment!" Furthermore, at least one large bureaucrat in Washington appears to have recognized that the prosecutor's seeking a felony indictment against Mr. Lee after he had exercised his right to

6. The concurring appellate judge in *United States v. Billy Ray Lee, supra*, has pointed-out that such a consent form could be devised

which would cover any retrials as well as the original trial before a magistrate.

**982**

appeal his conviction of a misdemeanor was a highly suspect reaction of improper motivation.[7]

■ But, it's unnecessary to a decision on the defendant's motion for a dismissal of the indictment in no. CR–2–76–18 to reach the issue of actual vindictive retaliatory motivation on the part of the prosecutor. It is not required that actual retaliatory motivation exist. *Blackledge v. Perry, supra*, 417 U.S. at 28, 94 S.Ct. at 2102, 40 L.Ed.2d at 634[3]. The aim of freeing one defendant from the potential of greater punishment for having successfully attacked his first conviction is not primarily for his personalized benefit; it is to assure that *subsequent* defendants will not be deterred from exercising *their* right to appeal in the future because of *apprehension* that the prosecutor may substitute a more stringent charge for the original one and subject them to the potential of confinement for an increased period of time. *Ibid.*, 417 U.S. at 28, 94 S.Ct. at 2102, 40 L.Ed.2d at 634–635[4]. So, even without a specific finding herein of prosecutorial vindictiveness, the available evidence reflects a realistic likelihood thereof. Such a precious asset as due process of law cannot be sacrificed safely to bring about the felony conviction of one well-publicized criminal.

For the reasons assigned, Mr. Lee's motion of October 22, 1976 hereby is GRANTED in so far as it seeks a dismissal thereof, and the indictment of October 13, 1976 therein hereby is

DISMISSED. The defendant hereby is released from custody thereunder.

The United States moved for a retransfer of the complaint in no. CR–2–76–24 to the Northern Division of this district, wherein

such offense is alleged to have occurred and which would provide a more convenient forum for a retrial. The defendant objected to such retransfer.

It is stipulated that:

On January 17, 1976 at Knoxville, Tennessee, the defendant Mr. Billy Ray Lee did attempt to board an aircraft being operated by an air carrier in interstate transportation, to wit: Delta Air Lines flight 462 at McGhee Tyson airport, Knoxville, Tennessee, while there was contained in his carry-on luggage a loaded .38-caliber Smith & Wesson revolver pistol, serial no. J129867.

Mr. Lee was not at the time he attempted to board the aforementioned aircraft a law enforcement officer or otherwise authorized under regulations issued by the administrator of the Federal Aviation Agency to board or to carry dangerous or deadly weapons in air transportation or interstate air transportation.

Thus, all of the facts alleged in the complaint in no. CR–2–76–24 are stipulated, so that no witnesses to such stipulated facts will be called to testify.

It has been established as the law of this case, see *Hayes v. Crutcher*, D.C.Tenn. (1956), 137 F.Supp. 853, 854[1], that, Mr. Lee cannot be convicted of violating the provisions of 49 U.S.C. § 1472(*l*) if he did not know—had forgotten—that he had the weapon involved in his briefcase. *United States v. Lee, supra*, 383 F.Supp. at 1034–1036[1]. Thus, it appears that the only issue to be determined factually will be whether Mr. Lee had in reality forgotten that he had the pistol in his briefcase at the pertinent times.

**7.** This prosecutor, instead of cringing from the possibility of an appellate reversal of a judgment of conviction of a citizen, which should never have been instituted in the first place, should have exercised his duty to bring to the attention of the Court this information suggestive that Mr. Lee should not be prosecuted by a felony indictment. That the prosecutor had such a duty appears without question. *Cf. Imbler v. Pachtman* (1976), 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128, 141, n. 25[9b],

citing for comparison, ABA Code of Prof. Resp. § EC 7–13; ABA Standards Relating to the Prosecution Function, § 3.11. The functional comparability of the discretionary judgment to be exercised by a prosecuting attorney is of such a high degree of responsibility that courts have been led to refer to them as "quasi-judicial" officials and their immunities being termed as "quasi-judicial" as well. *Ibid.*, 424 U.S. at 423, 96 S.Ct. at 991, 47 L.Ed.2d at 139, n. 20.

■ The defendant has elected, see *United States v. Lee, supra,* to be tried by a judge and jury in this Court. It is required that the prosecution shall be had in this district at some place of holding court, such place to be fixed with due regard to the convenience of the defendant and the witnesses. Rule 18, Federal Rules of Criminal Procedure. It has been represented to the Court on behalf of Mr. Lee that it will be more convenient for him to be tried in the Northeastern Division, of which he is resident and where he conducts his businesses. As all the essential facts necessary to establish a prima facie case of guilt have been stipulated by the parties, thus requiring no offer of witnesses by the prosecution on direct examination, and trial in the Northeastern Division being represented as the place of superior convenience of the defendant, the prosecution's motion for a retransfer hereof to the Northern Division hereby is

DENIED.

