**UNITED STATES of America,**

**v.**

**Benjamin RODRIGUEZ, Defendant.**

**No. 76 Cr. 890.**

United States District Court,
S. D. New York.

April 15, 1977.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; James Lavin, Constance Cushman, New York City, of counsel.

Albert J. Krieger, New York City, for defendant; Joseph Beeler, Miami, Fla., of counsel.

LASKER, District Judge.

On April 16, 1974 indictment 74 Cr. 421 was filed charging Benjamin Rodriguez with attempted income tax evasion and filing a materially false income tax return for the year 1967. After a trial on this indictment before Judge Carter, on March 2,

1976, Rodriguez was found guilty on both counts; on April 6, 1976, he received a two year sentence of imprisonment. On November 30, 1976 his conviction was affirmed by the Second Circuit.

On September 15, 1976 (while the above appeal was pending) the instant indictment, 76 Cr. 890, was filed charging one count of evading taxes in the year 1969 and a second count of evading taxes in the year 1970. Rodriguez moves to dismiss this indictment on the following bases: (1) under *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) because its filing was retaliatory (or could be so viewed) for the defendant's refusal to plead guilty to the 1974 indictment charging violations of the 1967 tax year; (2) under *Blackledge v. Perry, supra,* because its filing was retaliatory (or could be so viewed) for the defendant's having filed a notice of appeal; (3) because it is conceded by the government that one factor motivating its final decision to seek indictment was its view that the two year sentence previously imposed was too lenient; and (4) in the exercise of its supervisory powers the court should dismiss the indictment because all facts on which it is based were known to the government long before trial of the 1974 indictment and failure to try the two indictments together was prejudicial to the defendant whose defense to both indictments is based on identical factual contentions presented through identical witnesses.

■ Although the defendant urged that a full evidentiary hearing was required to decide these matters, the government opposed the application. On a consideration of the affidavits submitted by both sides and the undisputed facts developed at oral argument on the motion held April 5, 1977, it is concluded that no evidentiary hearing is required,[1] and that the defendant's motion to dismiss must be denied.

## I.

In *Blackledge v. Perry, supra,* 417 U.S. 21, 94 S.Ct. 2098, the Supreme Court held that where a prosecutor chose originally to charge a defendant with the misdemeanor of assault with a deadly weapon, it was not "constitutionally permissible" for the prosecutor to file a subsequent indictment charging a felony of assault based on the same underlying conduct where the defendant, after being convicted in state district court, filed a notice of appeal which under state law entitled him to trial *de novo* in the state superior court. The potential for vindictiveness in response to the defendant's exercise of his rights, and the mere appearance of vindictiveness which in itself might "chill" the exercise of those rights, "simply precluded" the state from subjecting the defendant to the new accusation. The Court added:

> "There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in [*North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)] however, was not grounded upon the proposition that actual retaliatory motivation must invariably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.' 395 U.S. at 725 [89 S.Ct. 2072 at 2080.] We think it clear that the same considerations apply here. A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of

---

1. Although it is sometimes essential to do so, e. g. *United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974), members of the United States Attorney's office should be required to testify as to the reasons for their decisions to seek indictments only under extraordinary circumstances; similarly, their investigative files in an active case should normally be immune from public scrutiny. See *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

incarceration." 417 U.S. at 28, 94 S.Ct. at 2102.

The *Blackledge* rationale has been extended to preclude prosecutors from adding counts to an indictment following a defendant's successful attack on a previously entered plea of guilty, *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976); or from charging a defendant with first degree murder after a trial on second degree murder (for the same underlying act) ended in a mistrial granted on defendant's motion, *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407 (1974); from adding a count based on the habitual offender statute when the defendant refused to plead guilty, *Hayes v. Cowan,* 547 F.2d 42 (6th Cir. 1976); from indicting a defendant initially charged with a misdemeanor for a felony after the defendant refused to waive his right to be tried by a district judge rather than a United States Magistrate on the misdemeanor charge, *United States v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976); or indicting a defendant on additional charges in response to his decision to seek a change of venue to which he was entitled, *United States v. DeMarco,* 401 F.Supp. 505 (C.D.Cal.1975). As is apparent, *Blackledge* and its progeny have for the most part involved situations in which following a defendant's successful exercise of a constitutional or statutory right, the prosecutor increased the grade of the offense initially charged for the same underlying conduct. See, e. g., *Blackledge v. Perry, supra; Hayes v. Cowan, supra;* [2] *United States v. Ruesga-Martinez, supra; United States v. Jamison, supra.*

▆▆▆ Here the prosecutorial conduct complained of is the bringing of a second indictment charging criminal acts separate and distinct from those charged in the first indictment in such a way similarly as to create the appearance or potential for vindictiveness. Although two courts have held that charging additional criminal acts fol-

lowing a defendant's, exercise of his rights is prohibited where the government knew of the factual basis for the charges at the time of the initial charging decision, *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976); *United States v. DeMarco,* 401 F.Supp. 505 (C.D.Cal.1975), this circuit appears to have adopted a contrary rule. In *United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974) *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), one of the defendants claimed that whereas in his first trial he had been charged with two counts of distributing cocaine, in violation of 21 U.S.C. § 841, following his successful appeal, the government charged him with two counts of distributing heroin in violation of the same statute. Defendant contended

"that this substitution of heroin charges for cocaine charges was extremely prejudicial and that it was a vindictive reaction to appellant's embarrassing disclosure that the U. S. Attorney's Office had promised Lipsky [a witness] immunity while purporting not to have done so." 503 F.2d at 988.

The Court of Appeals ruled that:

"This theory might have some force had the government, for example, added to a previous charge of distributing narcotics in violation of 21 U.S.C. § 841 a charge of distributing the same narcotics to a minor in violation of 21 U.S.C. § 845. That is not the case here. It is one thing to increase a charge from manslaughter to murder, and quite another to charge a defendant, subsequent to a successful appeal, with a second murder. '[*North Carolina v. Pearce*] would have . . . application, if a prosecutor . . . charged a defendant whose first conviction had been set aside with a more serious offense *based upon the same conduct.*' [*United States ex rel. Williams v. McMann,* 436 F.2d 103 at 105 (2d Cir. 1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971)] [emphasis added by *Mallah* court]. Here, the heroin

2. Although in *Hayes* a count charging violation of the habitual offender statute was added to the indictment, the basis for the added count was solely those counts which had already

been charged; in other words, it is appropriate to regard such a charge as essentially adding to the gravity of the offense initially charged on the basis of the same underlying acts.

**524**

charges are based upon acts which are distinct from the charges previously brought against the appellant. The government's decision to prosecute appellant for counts two and six is well within the traditionally broad ambit of prosecutorial discretion." 503 F.2d at 988.

Thus, it appears to be the rule in this circuit that the government is free to charge additional or different counts following a successful appeal (or presumably, other exercise of the defendant's rights) so long as the new counts charge acts which are different and distinct from those initially charged.[3] While this is not necessarily the result we would reach were the question open, it is the law of the circuit and must be applied. On this basis alone the claims relating to the filing of the second indictment in retaliation for the defendant's refusal to plead guilty, or filing a notice of appeal, must be rejected.

**3.** *Mallah* was decided just after the Supreme Court's decision in *Blackledge v. Perry, supra*, but contains no reference to *Blackledge*. There is no reason to believe, however, that the Court of Appeals' decision or reasoning would differ if it had actively considered *Blackledge*. The Second Circuit had itself decided already, in the *Williams* case, *supra*, 436 F.2d 103, that the principles of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) were applicable to enhanced charges as well as enhanced sentences following appeal, thereby anticipating in full the Court's decision in *Blackledge*. The factual circumstances in *Blackledge* are precisely those which the Second Circuit in *Mallah* indicated would warrant relief, and there is thus no inconsistency between *Blackledge* and *Mallah* which might lead to the conclusion that the Court of Appeals would decide the issue differently today.

**4.** The notice of appeal must have been filed in late April or early May; the indictment did not come down until September 15. Thus even the timing of the indictment does not suggest a retaliatory purpose or connection. Moreover, if the purpose or appearance were retaliatory (that is, anticipating a favorable ruling on appeal) then logically the prosecution would have been withdrawn following the unanimous affirmance of Rodriguez' conviction. Finally, it is simply incredible to this court that in this district the government would "retaliate" against a defendant for filing a notice of appeal, which almost invariably follows a jury verdict of guilty.

If *Mallah* had been decided differently, or if the reading given it above is too expansive, we would face more difficult issues which would nonetheless be decided adversely to the defendant. Although we find no merit to the claim that the second indictment was filed in response to the defendant's filing a notice of appeal,[4] it is a most troublesome proposition that the government is free to charge a defendant with a limited indictment for purposes of plea bargaining and then add new charges, known to it at the time of the initial indictment, when the defendant refuses to plead guilty.[5] It is uncontested that the Internal Revenue Service investigation of Rodriguez, which bridged all years here in question, concluded in 1974 and that its files had been turned over to the United States Attorney's office at least by August, 1974.[6] It is also agreed that in August, 1974 plea negotiations were had between an Assistant Unit-

**5.** At oral argument the government suggested the situation is indistinguishable from the commonly accepted practice of charging a defendant in an indictment with several counts, and then accepting a plea of guilty to less than all counts charged. Although the distinction may be more illusory than real, it seems to us that there is a distinction between the two situations analogous to the distinction between threatening a defendant with a more severe sentence than would otherwise be considered appropriate if he goes to trial, and promising a defendant some leniency from the otherwise appropriate sentence in recognition of the expense and time saved the court—and the defendant's acceptance of the legal consequences of his action—when he pleads guilty. The latter is permissible as a matter of constitutional law; the former is not. *United States v. Derrick*, 519 F.2d 1 (6th Cir. 1975). See also *Brady v. United States*, 397 U.S. 742, 751, 90 S.Ct. 1463, 25 L.Ed. 747 (1970); *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**6.** We reject the defendant's argument that the only relevant time period for purposes of evaluating his claim is when the I.R.S., an arm of the government, had completed its investigation. Any responsible U. S. Attorney's office would conduct its own review and investigation of facts before seeking indictment, and the grand jury, at least theoretically, exercises yet another independent review of the facts gathered by the I.R.S.

ed States Attorney and defense counsel which included an offer to accept a plea to violations in any single tax year (e. g. to the then existing indictment for tax year 1967) in exchange for a government promise that no prosecutions would be had on other tax years (including those covered by this motion). At that time, the government advised defense counsel that if the plea was rejected, prosecution would proceed separately on the existing indictment before any other prosecutions.

The rationale of such cases as *Johnson, supra,* and *DeMarco, supra,* is that in its initial charging decision the government has made its decision of what charges should be brought against the defendant in the public interest; thus, where charges whose factual basis was known to the prosecutor at the time of the initial charging decision are brought following an exercise of rights by the defendant, a strong presumption arises of its retaliatory purpose. Were the court even suspicious that the government's motivation for holding off on the second indictment was to penalize the defendant for asserting his right to a trial, further evidentiary hearings and explorations would be necessary. Under ordinary circumstances the government should not be permitted to charge only those counts to which it will accept a plea and then respond to a defendant who insists on his right to a jury trial by charging additional counts, even though they be based on additional criminal acts alleged to have been committed.

However, the present record establishes that the government in the instant case had legitimate, good faith reasons (a) for not indicting Rodriguez for violations in tax years 1969–70 together with the violations for tax year 1967, and (b) for awaiting the outcome of the trial on the first indictment before deciding whether to proceed with the instant indictment.

As set forth in the affidavit of William Kelleher, an Assistant United States Attorney assigned to the prosecution of the 1974 indictment, "It was only after the [I.R.S.] investigation was referred to the United States Attorney's office that the Government learned of an existing witness who would testify that Mr. Rodriguez had earned substantial sums during 1967 from the sale of pure heroin." The witness, Claude Pastou, testified before the grand jury on April 15, 1974; the indictment was filed on April 16, 1974, the date on which the statute of limitations for violations in tax year 1967 ran. As the government set forth in oral argument, there was an immediate and compelling necessity to indict Rodriguez on the 1967 violations; and since the government had available additional time to put the evidence of violations in later tax years before the grand jury, it was an appropriate exercise of discretion for them to take further time to pursue those investigations. This was particularly true in light of the absence, continuing to date, of any witness to testify to actual unreported income in later tax years. As Kelleher's affidavit sets forth, the first indictment "was filed at the time it was because the statute of limitations was about to run for that year. It charged violations for the 1967 tax year because the Grand Jury investigation had not yet been completed with respect to the 1969 and 1970 tax years." For this reason, we find that there was no abuse of discretion or violation of due process in the government's failing to indict on all tax years at the same time in the first instance.

Defendant urges nonetheless that it would have been possible for the government to complete its grand jury investigation on the later tax years and procure an indictment superseding the first one and charging all tax offenses well before the trial on the first indictment; the government does not dispute the fact that it could have done so (although it does point out that the grand jury heard witnesses through 1975–76 and heard the last witness in September 1976, just before the instant indictment was filed on September 15, 1976). Mr. Kelleher's affidavit states that the reason for not filing a superseding indictment was that the 1974 indictment was tried as both a "specific item" (the heroin

sale) case and an "expenditures" case, whereas the 1976 indictment is strictly an "expenditures" case and that therefore "combined prosecution of all three years evasion, even had the investigation been completed, would have presented problems of proof and argument not present in separate prosecutions." Although the defendant vigorously urges in support of his motion that his defense to both indictments was that his expenditures derived from a fund accumulated in 1965 from real estate investments, it is a legitimate exercise of prosecutorial discretion to rely on differences in the prosecution's proof in deciding to prosecute separately.

Moreover, the government set forth additional factors justifying its decision to await the outcome of the first trial in deciding whether to indict for the later offenses. In essence, the government argues that it was reasonable to wait to see if the jury believed the defense that excess expenditures in 1967 were made out of a fund garnered through real estate investment activities in Puerto Rico—the same defense to be presented against the present charges. If the jury failed to convict in the 1967 case in which the government had two avenues of proof, then given the limited public resources available for prosecution, the government might decide not to proceed with the exclusively "expenditures" cases on the 1969 and 1970 years. This is also a legitimate consideration which under the facts and circumstances of this case—in particular, the difficulty and expense in preparing and presenting a tax evasion case to a grand jury—warranted the government in proceeding as it did.[7]

## II.

The government concedes that "the decision to seek this [1976] indictment was influenced in part by the sentence imposed after the first trial;" it adds, "but even had the defendant received the maximum penalty of five years, the office would have seriously considered seeking the second indictment." (Affidavit of William J. Kelleher). In answer the defendant urges a proposition with which this court has some sympathy: that in considering the sentence imposed by Judge Carter the government acted impermissibly in encroaching upon, or usurping, the authority of the district judge to impose sentence—an exercise of discretion committed solely to the sentencing judge. This claim is not one arising under *Blackledge v. Perry*, it should be noted, since the sentencing decision is not one in which the defendant exercises a procedural right which a subsequent indictment could be viewed as penalizing. Nonetheless, there does exist a potential for abuse in permitting prosecutors to decide whether to indict defendants on the basis of the sentencing decision of the judge before whom a previous prosecution is brought. If extensive use were so made of the charging power, it could become a tool for the imposition of Draconian sanctions—sanctions which if they do not take the form of increased sentences (that is, if subsequent prosecutions yield concurrent sentences) take the form of repeated battles against successive charges.

On the other hand, one of the many factors which a prosecutor is duty bound to consider in exercising his discretion to commit public funds to the prosecution of criminal offenders is the extent to which the potential defendant has already been, or is being punished or confined, by virtue of other or earlier prosecutions. All participants in the criminal justice system have authority and discretion to weigh independently the public interests to be served in subjecting particular individuals to its processes. Although this distribution of discretion and authority may sometimes result in conflicting decision-making, cf. *Lupo v. Norton*, 371 F.Supp. 156, 163 (D.Conn. 1974), the independence of the prosecutorial and sentencing functions suggests that it is

---

**7.** We express no opinion on whether if the government attempted numerous successive prosecutions of offenses committed in successive tax years at some point the indictment should be dismissed either on due process grounds or in the exercise of the court's supervisory powers.

appropriate for the government to give limited consideration to sentences previously imposed in deciding whether to pursue subsequent investigations. Good faith consideration of such a nature cannot fairly be described as an abuse of discretion or invasion of the prerogatives of the sentencing judge. There is no indication that the government attempted improperly to influence the sentence imposed by Judge Carter, or that they will do so in the instant case, should a judgment of conviction result. Accordingly, the indictment should not be dismissed on this ground.[8]

For the foregoing reasons, the defendant's motion to dismiss the indictment is denied.

It is so ordered.

8. Defendant's other contentions, in particular that he was the victim of impermissible selective prosecution, are not supported by the affidavits.