BLACKLEDGE, WARDEN, ET AL. *v.* PERRY

No. 72–1660.  Argued February 19, 1974—Decided May 20, 1974

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, BRENNAN, WHITE, MARSHALL, and BLACKMUN, JJ., joined.  REHNQUIST, J., filed a dissenting opinion, in Part II of which POWELL, J., joined, *post,* p. 32.

*Richard N. League,* Assistant Attorney General of North Carolina, argued the cause for petitioners. With him on the brief was *Robert Morgan,* Attorney General.

*James E. Keenan,* by appointment of the Court, 414 U. S. 1020, argued the cause and filed a brief for respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

While serving a term of imprisonment in a North Carolina penitentiary, the respondent Perry became involved in an altercation with another inmate. A warrant issued, charging Perry with the misdemeanor of assault with a deadly weapon, N. C. Gen. Stat. § 14–33 (b)(1) (1969). Under North Carolina law, the District Court Division of the General Court of Justice has exclusive jurisdiction for the trial of misdemeanors. N. C. Gen. Stat. § 7A–272. Following a trial without a jury in the District Court of Northampton County, Perry was convicted of this misdemeanor and given a six-month sentence, to be served after completion of the prison term he was then serving.

Perry then filed a notice of appeal to the Northampton County Superior Court. Under North Carolina law, a person convicted in the District Court has a right to a trial *de novo* in the Superior Court. N. C. Gen. Stat. §§ 7A–290, 15–177.1. The right to trial *de novo* is absolute, there being no need for the appellant to allege error in the original proceeding. When an appeal is taken, the statutory scheme provides that the slate is wiped clean; the prior conviction is annulled, and the prosecution and the defense begin anew in the Superior Court.[1]

---

[1] See generally *State* v. *Spencer,* 276 N. C. 535, 173 S. E. 2d 765; *State* v. *Sparrow,* 276 N. C. 499, 173 S. E. 2d 897.

After the filing of the notice of appeal, but prior to the respondent's appearance for trial *de novo* in the Superior Court, the prosecutor obtained an indictment from a grand jury, charging Perry with the felony of assault with a deadly weapon with intent to kill and inflict serious bodily injury, N. C. Gen. Stat. § 14–32 (a) (1969). The indictment covered the same conduct for which Perry had been tried and convicted in the District Court. Perry entered a plea of guilty to the indictment in the Superior Court, and was sentenced to a term of five to seven years in the penitentiary, to be served concurrently with the identical prison sentence he was then serving.[2]

A number of months later, the respondent filed an application for a writ of habeas corpus in the United States District Court for the Eastern District of North Carolina. He claimed that the indictment on the felony charge in the Superior Court constituted double jeopardy and also deprived him of due process of law. In an unreported opinion, the District Court dismissed the petition for failure to exhaust available state remedies. The United States Court of Appeals for the Fourth Circuit

---

[2] The respondent's guilty plea was apparently premised on the expectation that any sentence he received in the Superior Court would be served concurrently with the sentence he was then serving, as contrasted with the consecutive sentence imposed in the District Court. That expectation was fulfilled, but it turned out that the guilty plea resulted in increasing the respondent's potential term of incarceration. Under applicable North Carolina law, the five- to seven-year assault sentence did not commence until the date of the guilty plea, October 29, 1969. By that time, Perry had already served some 17 months of the sentence he was serving at the time of the alleged assault. Thus, the effect of the five- to seven-year concurrent sentence on the assault charge was to increase his potential period of confinement by these 17 months, as opposed to the six-month increase envisaged by the District Court's consecutive sentence.

reversed, holding that resort to the state courts would be futile, because the Supreme Court of North Carolina had consistently rejected the constitutional claims presented by Perry in his petition. 453 F. 2d 856.[3] The case was remanded to the District Court for further proceedings.

On remand, the District Court granted the writ. It held that the bringing of the felony charge after the filing of the appeal violated Perry's rights under the Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Benton* v. *Maryland,* 395 U. S. 784. The District Court further held that the respondent had not, by his guilty plea in the Superior Court, waived his right to raise his constitutional claims in the federal habeas corpus proceeding. The Court of Appeals affirmed the judgment in a brief *per curiam* opinion. We granted certiorari, 414 U. S. 908, to consider the seemingly important issues presented by this case.

I

As in the District Court, Perry directs two independent constitutional attacks upon the conduct of the

---

[3] The Court of Appeals further instructed the District Court to await the ruling of this Court in *Rice* v. *North Carolina,* 434 F. 2d 297 (CA4), cert. granted, 401 U. S. 1008. *Rice* involved a challenge to the constitutionality of an enhanced penalty received after a criminal defendant had sought a trial *de novo* under North Carolina's two-tiered misdemeanor adjudication system. This Court did not reach the merits of this issue in *Rice,* instead vacating and remanding to the Court of Appeals for consideration as to whether the case had become moot. 404 U. S. 244.

Subsequently, in *Colten* v. *Kentucky,* 407 U. S. 104, we dealt with the merits of this issue, and held that the imposition of an increased sentence on trial *de novo* did not violate either the Due Process or the Double Jeopardy Clause. The District Court in the present case had the benefit of the *Colten* decision before issuing its opinion granting habeas corpus relief.

State in haling him into court on the felony charge after he took an appeal from the misdemeanor conviction. First, he contends that the felony indictment in the Superior Court placed him in double jeopardy, since he had already been convicted on the lesser included misdemeanor charge in the District Court. Second, he urges that the indictment on the felony charge constituted a penalty for his exercising his statutory right to appeal, and thus contravened the Due Process Clause of the Fourteenth Amendment.[4] We find it necessary to reach only the latter claim.

Perry's due process arguments are derived substantially from *North Carolina* v. *Pearce,* 395 U. S. 711, and its progeny. In *Pearce,* the Court considered the constitutional problems presented when, following a successful appeal and reconviction, a criminal defendant was subjected to a greater punishment than that imposed at the first trial. While we concluded that such a harsher sentence was not absolutely precluded by either the Double Jeopardy or Due Process Clause, we emphasized that "imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be . . . a violation of due process of law." *Id.,* at 724. Because "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives

---

[4] This Court has never held that the States are constitutionally required to establish avenues of appellate review of criminal convictions. Nonetheless, "it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi* v. *Yeager,* 384 U. S. 305, 310. See also *Griffin* v. *Illinois,* 351 U. S. 12; *Douglas* v. *California,* 372 U. S. 353; *Lane* v. *Brown,* 372 U. S. 477; *Draper* v. *Washington,* 372 U. S. 487; *North Carolina* v. *Pearce,* 395 U. S. 711, 724–725; *Chaffin* v. *Stynchcombe,* 412 U. S. 17, 24 n. 11.

after a new trial," *id.*, at 725, we held that an increased sentence could not be imposed upon retrial unless the sentencing judge placed certain specified findings on the record.

In *Colten* v. *Kentucky,* 407 U. S. 104, the Court was called upon to decide the applicability of the *Pearce* holding to Kentucky's two-tiered system of criminal adjudication. Kentucky, like North Carolina, allows a misdemeanor defendant convicted in an inferior trial court to seek a trial *de novo* in a court of general jurisdiction.[5] The appellant in *Colten* claimed that the Constitution prevented the court of general jurisdiction, after trial *de novo,* from imposing a sentence in excess of that imposed in the court of original trial. This Court rejected the *Pearce* analogy. Emphasizing that *Pearce* was directed at insuring the absence of "vindictiveness" against a criminal defendant who attacked his initial conviction on appeal, the Court found such dangers greatly minimized on the facts presented in *Colten.* In contrast to *Pearce,* the court that imposed the increased sentence after retrial in *Colten* was not the one whose original judgment had prompted an appellate reversal; thus, there was little possibility that an increased sentence on trial *de novo* could have been motivated by personal vindictiveness on the part of the sentencing judge. Hence, the Court thought the prophylactic rule of *Pearce* unnecessary in the *de novo* trial and sentencing context of *Colten.*

The *Pearce* decision was again interpreted by this Court last Term in *Chaffin* v. *Stynchcombe,* 412 U. S. 17, in the setting of Georgia's system under which sentencing responsibility is entrusted to the jury. Upon retrial following the reversal of his original conviction, the

---

[5] For a more exhaustive list of States employing similar two-tiered procedures, see *Colten, supra,* at 112 n. 4.

defendant in *Chaffin* was reconvicted and sentenced to a greater term than had been imposed by the initial jury. Concentrating again on the issue of vindictiveness, the Court found no violation of the *Pearce* rule. It was noted that the second jury was completely unaware of the original sentence, and thus could hardly have sought to "punish" Chaffin for his successful appeal. Moreover, the jury, unlike a judge who had been reversed on appeal, could hardly have a stake in the prior conviction or any motivation to discourage criminal defendants from seeking appellate review. Hence, it was concluded that the danger of vindictiveness under the circumstances of the case was *"de minimis,"* *id.,* at 26, and did not require adoption of the constitutional rule set out in *Pearce.*

The lesson that emerges from *Pearce, Colten,* and *Chaffin* is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of "vindictiveness." Unlike the circumstances presented by those cases, however, in the situation here the central figure is not the judge or the jury, but the prosecutor. The question is whether the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case. We conclude that the answer must be in the affirmative.

A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such

28

appeals—by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.

There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." 395 U. S., at 725. We think it clear that the same considerations apply here. A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.[6] Cf. *United States* v. *Jackson*, 390 U. S. 570.

Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond

---

[6] Moreover, even putting to one side the potentiality of increased incarceration, conviction of a "felony" often entails more serious collateral consequences than those incurred through a misdemeanor conviction. See generally Special Project, The Collateral Consequences of a Criminal Conviction, 23 Vand. L. Rev. 929, 955–960; Note, Civil Disabilities of Felons, 53 Va. L. Rev. 403, 406–408. Cf. *O'Brien* v. *Skinner*, 414 U. S. 524 (involving New York law under which convicted misdemeanants retain the right to vote).

to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo.*[7]

## II

The remaining question is whether, because of his guilty plea to the felony charge in the Superior Court, Perry is precluded from raising his constitutional claims in this federal habeas corpus proceeding. In contending that such is the case, petitioners rely chiefly on this Court's decision last Term in *Tollett* v. *Henderson,* 411 U. S. 258.

The precise issue presented in *Tollett* was "whether a state prisoner, pleading guilty with the advice of counsel, may later obtain release through federal habeas corpus by proving only that the indictment to which he pleaded was returned by an unconstitutionally selected grand jury." *Id.,* at 260. The Court answered that question in the negative. Relying primarily on the guilty-plea trilogy of *Brady* v. *United States,* 397 U. S. 742, *McMann* v. *Richardson,* 397 U. S. 759, and *Parker* v. *North Carolina,* 397 U. S. 790, the Court characterized the guilty plea as "a break in the chain of events which has preceded it in the criminal process." 411 U. S., at 267. Accordingly, the Court held that when a criminal defendant enters a guilty plea, "he may not thereafter raise independent claims relating to the deprivation of con-

---

[7] This would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset, as in *Diaz* v. *United States,* 223 U. S. 442. In that case the defendant was originally tried and convicted for assault and battery. Subsequent to the original trial, the assault victim died, and the defendant was then tried and convicted for homicide. Obviously, it would not have been possible for the authorities in *Diaz* to have originally proceeded against the defendant on the more serious charge, since the crime of homicide was not complete until after the victim's death.

stitutional rights that occurred prior to the entry of the guilty plea." *Ibid.* Rather, a person complaining of such "antecedent constitutional violations," *id.,* at 266, is limited in a federal habeas corpus proceeding to attacks on the voluntary and 'intelligent nature of the guilty plea, through proof that the advice received from counsel was not "within the range of competence demanded of attorneys in criminal cases." See *McMann, supra,* at 771.

While petitioners' reliance upon the *Tollett* opinion is understandable, there is a fundamental distinction between this case and that one. Although the underlying claims presented in *Tollett* and the *Brady* trilogy were of constitutional dimensions, none went to the very power of the State to bring the defendant into court to answer the charge brought against him. The defendants in *McMann* v. *Richardson,* for example, could surely have been brought to trial without the use of the allegedly coerced confessions, and even a tainted indictment of the sort alleged in *Tollett* could have been "cured" through a new indictment by a properly selected grand jury. In the case at hand, by contrast, the nature of the underlying constitutional infirmity is markedly different. Having chosen originally to proceed on the misdemeanor charge in the District Court, the State of North Carolina was, under the facts of this case, simply precluded by the Due Process Clause from calling upon the respondent to answer to the more serious charge in the Superior Court. Unlike the defendant in *Tollett,* Perry is not complaining of "antecedent constitutional violations" or of a "deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U. S., at 266, 267. Rather, the right that he asserts and that we today accept is the right not to be haled into court at all upon the felony charge. The very initiation of the proceedings against

him in the Superior Court thus operated to deny him due process of law.

Last Term in *Robinson* v. *Neil,* 409 U. S. 505, in explaining why the Double Jeopardy Clause is distinctive, the Court noted that "its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." *Id.,* at 509. While our judgment today is not based upon the Double Jeopardy Clause, we think that the quoted language aptly describes the due process right upon which our judgment *is* based. The "practical result" dictated by the Due Process Clause in this case *is* that North Carolina simply could not permissibly require Perry to answer to the felony charge. That being so, it follows that his guilty plea did not foreclose him from attacking his conviction in the Superior Court proceedings through a federal writ of habeas corpus.[8]

---

[8] Contrary to the dissenting opinion, our decision today does not "assure that no penalty whatever will be imposed" on respondent. *Post,* at 39. While the Due Process Clause of the Fourteenth Amendment bars trial of Perry on the felony assault charges in the Superior Court, North Carolina is wholly free to conduct a trial *de novo* in the Superior Court on the original misdemeanor assault charge. Indeed, this is precisely the course that Perry has invited, by filing an appeal from the original judgment of the District Court.

The dissenting opinion also seems to misconceive the nature of the due process right at stake here. If this were a case involving simply an increased sentence violative of the *Pearce* rule, a remand for resentencing would be in order. Our holding today, however, is not that Perry was denied due process by the length of the sentence imposed by the Superior Court, but rather by the very institution of the felony indictment against him. While we reach this conclusion in partial reliance on the analogy of *Pearce* and its progeny, the due process violation here is not the same as was involved in those cases, and cannot be remedied solely through a resentencing procedure in the Superior Court. Cf. n. 6, *supra.*

Accordingly, the judgment of the Court of Appeals for the Fourth Circuit is affirmed.

*It is so ordered.*

MR. JUSTICE REHNQUIST, dissenting.

I would find it more difficult than the Court apparently does in Part I of its opinion to conclude that the very bringing of more serious charges against respondent following his request for a trial *de novo* violated due process as defined in *North Carolina* v. *Pearce,* 395 U. S. 711 (1969). Still more importantly, I believe the Court's conclusion that respondent may assert the Court's new-found *Pearce* claim in this federal habeas action, despite his plea of guilty to the charges brought after his invocation of his statutory right to a trial *de novo,* marks an unwarranted departure from the principles we have recently enunciated in *Tollett* v. *Henderson,* 411 U. S. 258 (1973), and the *Brady* trilogy, *Brady* v. *United States,* 397 U. S. 742 (1970); *McMann* v. *Richardson,* 397 U. S. 759 (1970); and *Parker* v. *North Carolina,* 397 U. S. 790 (1970).

I

As the Court notes, in addition to his claim based on *Pearce,* respondent contends that his felony indictment in the Superior Court violated his rights under the Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Benton* v. *Maryland,* 395 U. S. 784 (1969). Presumably because we have earlier held that "the jeopardy incident to" a trial does "not extend to an offense beyond [the trial court's] jurisdiction," *Diaz* v. *United States,* 223 U. S. 442, 449 (1912), the Court rests its decision instead on the Fourteenth Amendment due process doctrine of *Pearce.* In so doing, I think the Court too readily equates the role of the prosecutor, who is a natural adversary of the defendant and who, we observed in

*Chaffin* v. *Stynchcombe,* 412 U. S. 17, 27 n. 13 (1973), "often request[s] more than [he] can reasonably expect to get," with that of the sentencing judge in *Pearce.* I also think the Court passes too lightly over the reasoning of *Colten* v. *Kentucky,* 407 U. S. 104 (1972), in which we held that imposition of the prophylactic rule of *Pearce* was not necessary in Kentucky's two-tier system for *de novo* appeals from justice court convictions, even though the judge at retrial might impose a more severe sentence than had been imposed by the justice court after the original trial.

The concurring opinion in *Pearce,* 395 U. S. 711, 726, took the position that the imposition of a penalty after retrial which exceeded the penalty imposed after the first trial violated the guarantee against double jeopardy. But the opinion of the Court, relying on cases such as *United States* v. *Ball,* 163 U. S. 662 (1896), and *Stroud* v. *United States,* 251 U. S. 15 (1919), specifically rejected such an approach to the case. The Court went on to hold "that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction." 395 U. S., at 723. The Court concluded by holding that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.,* at 725. To make certain that those requirements of due process were met, the Court laid down the rule that "whenever a judge imposes a more severe sentence upon a defendant after

a new trial, the reasons for his doing so must affirmatively appear." *Id.,* at 726. Thus the avowed purpose of the remedy fashioned in *Pearce* was to prevent judicial vindictiveness from resulting in longer sentences after a retrial following successful appeal.

Since in theory if not in practice the second sentence in the *Pearce* situation might be expected to be the same as the first unless influenced by vindictiveness or by intervening conduct of the defendant, in theory at least the remedy mandated there reached no further than the identified wrong. The same cannot be said here. For while indictment on more serious charges after a successful appeal would present a problem closely analogous to that in *Pearce* in this respect, the bringing of more serious charges after a defendant's exercise of his absolute right to a trial *de novo* in North Carolina's two-tier system does not. The prosecutor here elected to proceed initially in the State District Court where felony charges could not be prosecuted, for reasons which may well have been unrelated to whether he believed respondent was guilty of and could be convicted of the felony with which he was later charged. Both prosecutor and defendant stand to benefit from an initial prosecution in the District Court, the prosecutor at least from its less burdensome procedures and the defendant from the opportunity for an initial acquittal and the limited penalties. With the countervailing reasons for proceeding only on the misdemeanor charge in the District Court no longer applicable once the defendant has invoked his statutory right to a trial *de novo,* a prosecutor need not be vindictive to seek to indict and convict a defendant of the more serious of the two crimes of which he believes him guilty. Thus even if one accepts the Court's equation of prosecutorial vindictiveness with judicial vindictiveness, here, unlike *Pearce,* the Court's remedy reaches far beyond the wrong it identifies.

Indeed, it is not a little puzzling that the Court's remedy is the same that would follow upon a conclusion that the bringing of the new charges violated respondent's rights under the Double Jeopardy Clause. And the Court's conclusion that "[t]he very initiation of the proceedings against [respondent] in the Superior Court thus operated to deny him due process of law" surely sounds in the language of double jeopardy, however it may be dressed in due process garb.

## II

If the Court is correct in stating the consequences of upholding respondent's constitutional claim here, and indeed the State lacked the very power to bring him to trial, I believe this case is governed by cases culminating in *Tollett* v. *Henderson,* 411 U. S. 258 (1973). In that case the State no doubt lacked "power" to bring Henderson to trial without a valid grand jury indictment; yet that constitutional disability was held by us to be merged in the guilty plea. I do not see why a constitutional claim the consequences of which make it the identical twin of double jeopardy may not, like double jeopardy, be waived by the person for whose benefit it is accorded. *Kepner* v. *United States,* 195 U. S. 100, 131 (1904); *Harris* v. *United States,* 237 F. 2d 274, 277 (CA8 1956); *Kistner* v. *United States,* 332 F. 2d 978, 980 (CA8 1964).

In *Tollett* v. *Henderson, supra,* we held that "just as the guilty pleas in the *Brady* trilogy were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, . . . respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury." 411 U. S., at 266. Surely the due process violation found by the Court today is no less "antecedent" than the constitutional violations claimed to make the

grand jury indictment invalid in *Tollett* v. *Henderson,* the confession inadmissible in *McMann,* or the exercise of the right to a jury trial impermissibly burdened in *Brady* and *Parker.* As the Court notes, we reaffirmed in *Tollett* v. *Henderson* the principle of the *Brady* trilogy that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." 411 U. S., at 267. We went on to say there:

> "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*" *Ibid.*

The assertion by the Court that this reasoning is somehow inapplicable here because the claim goes "to the very power of the State to bring the defendant into court to answer the charge brought against him" is little other than a conclusion. Any difference between the issue resolved the other way in *Tollett* v. *Henderson* and the issue before us today is at most semantic. But the Court's "test" not only fails to distinguish *Henderson;* it also fails to provide any reasoned basis on which to approach such questions as whether a speedy trial claim is merged in a guilty plea. I believe the Court's departure today from the principles of *Henderson* and the cases preceding it must be recognized as a potentially major breach in the wall of certainty surrounding guilty pleas for which we have found constitutional sanction in those cases.

There is no indication in this record that respondent's guilty plea was the result of an agreement with the prose-

cutor. But the Court's basis for distinguishing the *Henderson* and *Brady* cases seems so insubstantial as to permit the doctrine of this case to apply to guilty pleas which have been obtained as a result of "plea bargains." In that event it will be not merely the State which stands to lose, but the accused defendant in the position of the respondent as well. Since the great majority of criminal cases are resolved by plea bargaining, defendants as a class have at least as great an interest in the finality of voluntary guilty pleas as do prosecutors. If that finality may be swept aside with the ease exhibited by the Court's approach today, prosecutors will have a reduced incentive to bargain, to the detriment of the many defendants for whom plea bargaining offers the only hope for ameliorating the consequences to them of a serious criminal charge.

## III

But if, as I believe, a proper analysis of respondent's constitutional claim produces at most a violation of the standards laid down in *North Carolina* v. *Pearce, supra,* I agree with the Court, though not for the reasons it gives, that respondent's claim was not merged in his guilty plea. Imposition of sentence in violation of *Pearce* is not an "antecedent constitutional violation," since sentence is customarily imposed after a plea of guilty, and is a separate legal event from the determination by the Court that the defendant is in fact guilty of the offense with which he is charged.

If respondent's claim is properly analyzed in terms of *Pearce,* I would think that a result quite different from that mandated in the Court's opinion would obtain. *Pearce* and the decisions following it have made it clear that the wrong lies in the increased sentence, not in the judgment of conviction, and that the remedy for a *Pearce* defect is a remand for sentencing consistent with due

process. *North Carolina* v. *Rice,* 404 U. S. 244, 247–248 (1971). In *Rice* we concluded that the Court of Appeals had erred in ruling that *Pearce* authorized the expunging of Rice's conviction after his trial *de novo* in North Carolina:

> "It could not be clearer . . . that *Pearce* does not invalidate the conviction that resulted from Rice's second trial . . . . *Pearce,* in short, requires only resentencing; the conviction is not *ipso facto* set aside and a new trial required. Even if the higher sentence imposed after Rice's trial *de novo* was vulnerable under *Pearce,* Rice was entitled neither to have his conviction erased nor to avoid the collateral consequences flowing from that conviction and a proper sentence." *Ibid.*

Since Rice had completely served his sentence, rather than reaching the merits of Rice's *Pearce* claim, we remanded for a determination whether any collateral consequences flowed from his service of the longer sentence imposed after retrial, or whether the case was moot.

Here, while respondent faced the prospect of a more severe sentence at the conclusion of his felony trial in the Superior Court of North Carolina, it was by no means self-evident that this would be the result. The maximum sentence which he could receive on the misdemeanor count was one and one-half years, but nothing in the record indicates that the Superior Court judge might not impose a lesser penalty than that, or even grant probation. Nor is there any indication in the habeas record, which contains only a fragment of the state court proceedings, that the Superior Court judge might not at the conclusion of the trial and after a verdict of guilty have before him for sentencing purposes information which would support an augmented sentence under *Pearce.* In fact, the habeas court found that the sentence actually

imposed was more severe than that which could have been imposed under the misdemeanor charge. But the remedy for that violation should be a direction to the state court to resentence in accordance with *Pearce,* rather than an order completely annulling the conviction. Respondent was originally convicted of assaulting a fellow inmate with a deadly weapon, and later pleaded guilty to a charge of assaulting the inmate with a deadly weapon with intent to kill him. But in spite of both a verdict of guilty on one charge and a plea of guilty to the other, the Court's decision may well, as a practical matter, assure that no penalty whatever will be imposed on him.

MR. JUSTICE POWELL joins in Part II of this opinion.