**UNITED STATES of America, Plaintiff,**

v.

**Tallice ANDREWS and Thurston Brooks, Jr., Defendants.**

**Crim. No. 7–80096.**

United States District Court, E. D. Michigan, S. D.

Feb. 3, 1978.

Victoria A. Toensing, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

John W. Tapp, Richard R. Nelson, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNT I OF THE INDICTMENT

PHILIP PRATT, District Judge.

Defendants Thurston Brooks and Tallice Andrews are charged in a three count superseding indictment with conspiracy, possession with intent to distribute heroin and unlawfully carrying a firearm during the commission of a felony. They have filed numerous pre-trial motions. The Court is here concerned only with the defendants' motion to dismiss Count I of the indictment.

The defendants contend that Count I of the superseding indictment, the conspiracy count, should be dismissed because it was

obtained in a fashion that suggests impermissible prosecutorial vindictiveness. The pertinent facts are that defendants were arrested at Detroit Metropolitan Airport on November 16, 1975. A complaint was issued two days later and then dismissed for lack of progress in January, 1976. In August, 1976 an indictment was returned charging Fannie Braswell with narcotics offenses. That indictment was superseded on November 8, 1976 charging Ms. Braswell and the other two defendants with narcotics and firearms offenses. On December 29, 1976 defendants Andrews and Brooks appeared before a Magistrate of this Court to be arraigned on the superseding indictment and were remanded without bail as requested by government motion. They appealed to this Court and were admitted to bail January 11. On January 13, 1977 the Grand Jury returned a second superseding indictment identical to the November, 1976 indictment except that a conspiracy count was added.[1] Defendants contend that the second superseding indictment, which added a new charge after they exercised their constitutional and statutory rights to be admitted to reasonable bail, was an impermissible exercise of prosecutorial power tending to chill the exercise of their rights.

█ Due process of law requires that even the appearance of vindictiveness must be absent from judicial proceedings. Thus, in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) the Supreme Court reversed a conviction where a greater sentence was imposed on a defendant after he was retried following reversal of his initial convictions. The Court held that these greater sentences resulted in a chilling of the defendant's right to appeal where there were no identifiable, objective reasons appearing on the record for the increased sentence. The Court said:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first con-

---

1. The conspiracy count charged that the two defendants and Ms. Braswell conspired together over a period of two days to do the substantive crimes charged. The only overt acts

charged on a day other than the day of the arrest occurred on November 15, 1975, the previous day, and encompassed an unspecified "meeting" of the three alleged conspirators.

viction must play no part in the sentence he receives after a new trial. And since such fear of vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080.

In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) this holding was extended to encompass vindictive prosecutorial action. Over a single dissent, the Supreme Court held that where a prosecutor who has a stake in the outcome "ups the ante" after a defendant exercises his right to · a trial *de novo* in a two-tiered criminal system, the ruling of *North Carolina v. Pearce, supra,* applies. In *Blackledge* the court emphasized that the lack of proof of bad faith is not fatal to a defendant's due process claim. Instead the court said:

> "The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal . . . [it is the apprehension of the harm which is the evil].'"
>
> *Blackledge v. Perry, supra* at 28, 94 S.Ct. at 2102.

■ Courts have interpreted this language to mean that in the context of a colorable claim of prosecutorial vindictiveness the prosecutor must justify his or her actions in the same manner as would a judge under *Pearce* by some fact or event, unrelated to the defendant's exercise of his rights, of which the prosecutor learns *after* the initial charge. *U. S. v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976); *U. S. v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407 (1974); *U. S. v. Gerard,* 491 F.2d 1300 (9th Cir. 1974). *Sefcheck v. Brewer,* 301 F.Supp. 793 (S.D.Iowa 1969). Consistent with *Pearce* and *Blackledge,* these courts' inquiries have not been directed at whether actu-

al retaliation was shown, but whether the *appearance* of vindictiveness exists. See also *U. S. v. Johnson,* 537 F.2d 1170 (4th Cir. 1976). As a corollary of these holdings, the justification for the increased charge must dispel the *appearance,* not the actuality, of vindictiveness.

The government argues as a threshold issue that the instant case does not fall within the holding of *Pearce, Blackledge* or their progeny. The government attempts to distinguish the previously cited cases by discussing their particular settings. Specifically, the government argues that the lack of a verdict or plea of guilty distinguishes this case from the law defendants rely on. These arguments are unavailing. As already noted, it is the apprehension that there may be retaliatory action, not the procedural state of the facts, which implicates due process rights. Reduced to its simplest terms, the Court is presented with a situation where there was an exercise by defendants of their right to seek admittance to bail, followed by a superseding indictment charging a new crime, with a separate penalty which arose from the same events that led to the original indictment. This is clearly a case that calls for analysis under the rule of *Pearce* and *Blackledge.*

In *North Carolina v. Pearce, supra,* which concerned increased penalties upon resentencing, the Supreme Court defined the relevant test as follows:

> "In order to assure the absence of [retaliatory] motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based on objective information concerning identifiable conduct on the part of the defendant occurring *after* the time of the original sentencing proceeding." (Emphasis supplied). 395 U.S. at 726, 89 S.Ct. at 2081.

In applying this standard to a possible situation of prosecutorial abuse, the Court of Appeals for the District of Columbia has said:

"The fact that in a particular case the actual impact on the defendant of a charge increase is slight is, of course, not determinative, any more than the fact that a prosecutor may not in fact have acted out of vindictiveness, for the evil to which *Pearce* is directed is the *apprehension* on the defendant's part of receiving a vindictively-imposed penalty for the assertion of rights. Moreover, we would hesitate to distinguish *Pearce* even in a case where the only possible prejudicial effect of the charge increase was minimal. The difficulty of drawing the line between those charge increases which do and do not carry sufficient potential impact to require restrictions of the kind imposed in *Pearce* persuades us that all charge increases should in this respect be treated alike."

*U. S. v. Jamison, supra* 164 U.S.App.D.C. at 308, 505 F.2d at 415. (Original emphasis). But cf. *U. S. v. Sturgill,* 563 F.2d 307 (6th Cir. 1977).

After reviewing the law, the *Jamison* court concluded that the sort of information justifying an increase in charge would include, for example, lack of existence of essential elements of the increased offense at the time of original indictment [2] or where the government, through no fault of its own, discovers new evidence of which it was unaware at the time of the original charge.

Neither of these situations is present in the instant case. The government expressly concedes that all the elements of the conspiracy charge, and all the facts which underlie the charge, were known to it at the time of the November, 1976 indictment. Instead the government seeks to justify its conduct by pointing out that the prosecutor in this case was inexperienced and did not realize that she should or could have sought a conspiracy indictment. This, in combination with a moratorium on the work of the Grand Jury in this District, due to challenges to the validity of the composition of those juries, and vacation schedules in the prosecutor's office, it is argued, prevented the presentation of testimony concerning a conspiracy to the Grand Jury until two days after the defendants' bond motion was decided. Government counsel has represented that but for the moratorium and scheduling difficulties she would have presented the conspiracy evidence to the Grand Jury in mid-December, prior to the time defendants filed their bond motion.[3]

In *U. S. v. Ruesga-Martinez, supra,* the Ninth Circuit, in an impressive opinion, considered certain of the issues presented by these facts. In that case, an alien was originally charged with unlawful entry into the United States, in violation of 8 U.S.C. § 1325. Section 1325 provides that first offenders are to be charged as misdemeanants. Under the Immigration Law, multiple offenders are to be charged as felons. Although the prosecutor, who was inexperienced, knew defendant to be a multiple offender, he nonetheless chose to charge him with the misdemeanor. When the defendant was arraigned he refused to waive his right to be tried by a district judge and a jury. Thereafter, the United States Attorney charged defendant with unlawful entry under 8 U.S.C. § 1326, the felony provision. Defendant moved to dismiss the superseding indictment for prosecutorial vindictiveness.

The Ninth Circuit held that when the prosecution reindicts an accused after he has exercised some procedural right, it bears a heavy burden to prove that an increase in the charge was justified. While not questioning the integrity of the prosecution, the *Ruesga-Martinez* court said "the mere *appearance* of vindictiveness is enough to place the burden on the prosecution." *U. S. v. Ruesga-Martinez, supra* at 1369 (original emphasis). In determining

---

2. In *Blackledge v. Perry, supra,* the Supreme Court gave the example of an individual who dies as a result of criminal assault after the return of the initial charges. It is clear that in such a case nothing would prevent the subsequent return of a murder charge.

3. The Court has not been apprised, nor does the record show, at what point in time the government, represented by same counsel before the Grand Jury and at the bond hearing, determined to move to remand these defendants without bond.

that the prosecution had failed to meet its burden, the Court said that a plea of inexperience "is, of course, no acceptable excuse whatsoever." *Id.* at 1370. Obviously the interest of a defendant in securing due process of law far outweighs any consideration to be granted inexperienced prosecutors. The Ninth Circuit also noted that regardless of the nature of the evidence in support of the increased charge, where the facts were known to the United States Attorney at the time of the original complaint, the prosecutor has made a discretionary choice which may not be rescinded at his or her unfettered discretion.

It remains to consider whether the unavailability of the Grand Jury, due to factors admittedly beyond the control of the individual prosecutor in charge of this case, satisfies the government's heavy burden to demonstrate a lack of vindictiveness. *U. S. v. DeMarco,* 550 F.2d 1224 (9th Cir. 1977) speaks persuasively to this issue. In *DeMarco* the defendant was originally charged in the District of Columbia with making false statements to the Internal Revenue Service. The defendant asserted his statutory venue rights to be tried in the Central District of California despite a prosecution threat to consider seeking additional counts if the case was transferred. In that case

> "The Government argue[d] that *Blackledge* does not control because here, unlike *Blackledge* . . . the motivation for the Government's threats grew out of limits placed on the original indictment resulting from the policy of the Department of Justice not to pursue contemporaneous indictments, rather than any vindictiveness against the defendant."

*Id.* at 1226.

This, of course, is similar to the situation with which the Court is presently concerned. Instead of a Department of Justice policy relating to prosecutions in different judicial districts, we are presented with a local prosecutorial decision to suspend proceedings before the Grand Jury. In *DeMarco* the court ruled that a departmental policy with broad application to many cases does not override a defendant's right to be charged in proceedings free of the appearance of vindictiveness.

> "*DeMarco* is controlled by the teaching of *Blackledge* unless the statutory right involved (change of venue) is so different from the statutory rights to appeal (*North Carolina v. Pearce, supra*) and to a trial *de novo* (*Blackledge v. Perry, supra*) as to justify a different result. We perceive no basis for distinguishing DeMarco's venue right under 18 U.S.C. § 3237(b) from the statutory rights considered in *Blackledge* and *Pearce*. As in those cases, the statutory right involved has due process overtones, although none of the rights is constitutionally mandated."

*Id.* at 1227.

In the instant case the right defendants asserted does have an explicit Constitutional basis. The Eighth Amendment prohibits the setting of "excessive bail." This Constitutional right carries with it the concomitant right to petition a court to reduce bail, which Congress has codified in 18 U.S.C. § 3146(d). This Court is in full agreement with the conclusion of the Ninth Circuit that

> "*Blackledge* and *Pearce* each establish a prophylactic rule imposing limits upon prosecutorial discretion is (sic) seeking new indictments or in conducting retrials when such actions carry with them the opportunity of retaliation for a defendant's exercise of a statutory right that has due process implications."

*Id.*

For a Constitutional right, it is even more essential to apply the prophylactic rule enunciated in *Blackledge* and *Pearce*.

In view of the fact that the teachings of the relevant cases show that

> "The prophylactic rule is designed not only to relieve the defendant who has asserted his right from bearing the burden from (sic) "upping the ante" but also to prevent chilling the exercise of such rights by other defendants who must make their choices under similar circumstances in the future."

*Id.*

The Court concludes that the government has not sustained its burden to show a legally acceptable justification for its reindictment, with increased charges, after the defendants exercised their right to admittance to bail. Defendants advance a significant Constitutional interest. That the government failed to charge a conspiracy prior to defendants' assertion of the right to bail because of inexperience, mistake and difficulties with Grand Jury scheduling does not alter the fact that the increased charge "appears vindictive." If left uncorrected, such action would undoubtedly chill the assertion of Constitutional rights. While the Court does not find that the action of the prosecutor was malicious, nor does it question her integrity, it must consider the issue in terms of whether the "appearances" are outweighed by other societal interests. This is not a case where the government has discovered previously unavailable evidence, so that the societal interest in bringing recently detected crime to justice is implicated. Nor is it a case where the new charge grows out of offenses committed at other times and places. *U. S. v. Preciado-Gomez,* 529 F.2d 935 (9th Cir. 1976); *U. S. v. Butler,* 414 F.Supp. 394 (D.Conn. 1976). For this latter reason alone the case of *U. S. v. Arnold,* Cr. No. 76–81242 (E.D.Mich. 4–5–77), relied on by the government, is distinguishable.[4]

The recently decided case of *Bordenkircher v. Hayes,* —— U.S. ——, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), reversing *Hayes v. Cowan,* 547 F.2d 42 (6th Cir. 1976), is also distinguishable from the facts at bar. In *Bordenkircher* during the course of plea negotiations a state prosecutor intentionally told a defendant who had been indicted for uttering and publishing a forged check that if the defendant refused to plead guilty in return for a recommended five year prison term the prosecutor would seek an indictment under the state's habitual offender act which carried a mandatory term of life

imprisonment. The Court held that this procedure did not abridge the defendant's due process rights.

Despite the fact that the Court of Appeals had analogized these facts to the holding in *North Carolina v. Pearce, supra,* and *Blackledge v. Perry, supra,* the Supreme Court ruled that:

> "We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment."
> *Bordenkircher v. Hayes, supra* —— U.S. at ——, 98 S.Ct. at 669.

The Court's narrow holding was bottomed on the express realization that plea bargaining is now a critical part of our criminal justice system. The Court conceded that:

> ". . . by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty."
> *Id.*

So long as the defendant in the plea bargaining process is fully informed of his rights and capable of exercising independent judgment the dynamics of the process of negotiating a plea are, in the Supreme Court's view, significantly different than the more usual adversarial relationships between prosecutors and defendants. The Court reaffirmed that:

> "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, see *North Carolina v. Pearce, supra,* 395 U.S., at 738, [89 S.Ct. 2072] (opinion of Black, J.) and for an agent of the State to pursue a course of action whose objec-

---

4. Even if the *Arnold* case were on all fours with these facts the Court is not persuaded that it dictates the result the government seeks. Proper prosecutorial procedure, not overindictment, is the answer to the dilemma posed by Judge Churchill in *Arnold.* See *Bordenkircher v. Hayes,* —— U.S. ——, ——, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978) (Blackmun J., dissenting).

tive is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' *Chaffin v. Stynchcombe, supra,* 412 U.S. 17 at 32–33, n. 20, [93 S.Ct. 1977, 36 L.Ed.2d 714.] See *United States v. Jackson,* 390 U.S. 570, [88 S.Ct. 1209, 20 L.Ed.2d 138.]

*Id.*

However, the Court distinguished the plea bargaining process from proper prosecutorial conduct by concluding that:

"in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."

*Id.*

■ The facts of the case at bar evidence none of the "mutuality of advantage" which the Supreme Court found in the plea bargaining process. Unlike the facts of *Bordenkircher,* it was not a legitimate part of our criminal justice system for the prosecutor here to respond to the exercise of a constitutional right by increasing the charge. Indeed the integrity of the criminal justice process demands that a prosecutor not increase the charges a defendant must face after he or she exercises the constitutional right to admittance to reasonable bail unless some independent reason exists on the record which dispels the appearance of vindictiveness.

■ The government argues in its second brief that "Granting defendants' motion would prejudice the Government *for no reason whatever* . . ." (Supplemental brief at 17, original emphasis). This characterization of the issue fails to comprehend the teaching of *North Carolina v. Pearce* and its progeny. The prosecutor is not merely an advocate. He or she is "an administrator of justice" as well. ABA Standards Relating to the Prosecution Function and the Defense Function, § 1.1(b) (1971). "The duty of the prosecutor is to seek justice, not merely to convict." *Id.* at § 1.1(c). See *Berger v. U. S.,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The cases previously cited demonstrate the systemic concerns involved in any motion to dismiss an indictment for prosecutorial vindictiveness. The Court is called upon in a motion such as this to determine whether the actions of the prosecutor are likely to engender a chilling effect on the exercise of Constitutional or statutory rights. Where, as here, there is an appearance of retaliatory vindictiveness the law imposes a heavy burden on the prosecution to justify its conduct in a manner that not only removes doubt as to actual vindictiveness, but puts at rest fears that the exercise of important rights will be deterred. The justification offered by the government here fails to provide a "neutral explanation" apparent from the record which satisfies the requisite test. *U. S. v. Sturgill, supra,* at 309.

The government's explanation does not overcome our society's substantial interest in preserving unblemished the integrity of our criminal justice system. The unswerving efforts of the judiciary to maintain public confidence in the fairness of the criminal justice process requires that the prosecution adhere to stringent standards. The Due Process Clause demands no less. The ruling here does not prejudice the government; it protects our Constitutional system. This is not a situation where the guilty necessarily escape punishment. Two of the three crimes charged remain unaffected, to stand or fall on their own merits. Nor is the government's right to amend criminal charges unduly abridged. Two important exceptions to the rule—changed circumstances and newly discovered evidence —exist. In addition there are numerous ways in which the government can protect its legitimate interest in returning superseding indictments without appearing to act in a vindictive, retaliatory manner.

The defendants' motion to dismiss Count I of the indictment is therefore granted.

IT IS SO ORDERED.