Walter J. LOVETT, Jr., Petitioner,
Appellant,

v.

Fred BUTTERWORTH, Superintendent,
Massachusetts Correctional Institution
at Walpole, Respondent, Appellee.

No. 79–1419.

United States Court of Appeals,
First Circuit.

Argued Oct. 5, 1979.

Decided Dec. 13, 1979.

Matthew H. Feinberg, Boston, Mass., by appointment of the Court, with whom Kassler, Feinberg & Feuer, Boston, Mass., was on brief, for petitioner, appellant.

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Section, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen. and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau, Boston, Mass., were on brief, for respondent, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and BONSAL,* Senior District Judge.

BONSAL, District Judge.

Walter J. Lovett, Jr. appeals from the denial by the district court of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He currently is serving a ten-to-twenty-year sentence in the Massachusetts penitentiary at Walpole. His appeal presents questions of importance regarding the scope of the due process clause of the fourteenth amendment.[1]

I

On June 17, 1975, a complaint was filed in the Second District Court of East Worcester charging petitioner with the crime of "break[ing] and enter[ing] in the nighttime a dwelling house . . . with intent therein to commit a felony . . . in violation of G.L. c. 266 § 16 . . .."[2] Under Massachusetts law, jurisdiction over crimes charged under section 16 is lodged concurrently in the superior courts and the district courts.[3] Following a non-jury trial before the district court, petitioner was found guilty as charged. He was sentenced to two and one-half years to be served in the Worcester House of Corrections. Petitioner then exercised his right to appeal for a trial *de novo* in the Worcester County Superior Court.[4] Mass.Gen.Laws, ch. 278, § 18.

---

\* Of the Southern District of New York, sitting by designation.

1. Petitioner also urges a violation of his right under the fifth amendment to protection against double jeopardy. We find it unnecessary to reach this claim.

2. Mass.Gen.Laws, ch. 266, § 16, provides:
   Whoever, in the night time, breaks and enters a building, ship or vessel, with intent to commit a felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one half years.

3. The two-tier system of criminal courts has been utilized in Massachusetts since the Colonial Period. The first level consists of the district courts and the Municipal Court of the City of Boston. Mass.Gen.Laws, ch. 218, §§ 1, 50.

The district courts exercise original jurisdiction over all felonies carrying a maximum sentence of five years, certain other felonies carrying higher sentences, all violations of municipal ordinances, and all misdemeanors except those involving criminal libel. *Id.* §§ 16–19, 26, 28, 49. All other crimes must be prosecuted in the superior courts. *See Ludwig v. Massachusetts*, 427 U.S. 618, 620, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976).

4. Had petitioner *pleaded* guilty in the district court, he would not have been entitled to a trial *de novo* in the superior court, but could only have appealed his sentence. Mass.Gen.Laws, ch. 278, § 18; *Morrissey v. Powell*, 304 Mass. 268, 269, 23 N.E.2d 411, 413 (1939). *See Commonwealth v. Crapo*, 212 Mass. 209, 210, 98 N.E. 702, 703 (1912).
   The Massachusetts system differs from similar systems in other states that afford defend-

While the appeal was pending, the Commonwealth obtained a grand jury indictment on the identical facts charging petitioner with the crime of "breaking and entering in the nighttime a dwelling house with intent to commit a felony" in violation of Mass.Gen.Laws, ch. 266, § 15.[5] The superior courts have exclusive jurisdiction over section 15 offenses. See id. ch. 218, § 26.

Petitioner's motion to dismiss the section 15 indictment was denied. He was convicted by a jury and sentenced to ten-to-twenty-years' imprisonment. On the Commonwealth's motion, the complaint upon which petitioner had been convicted in the district court was dismissed.

Petitioner's conviction and sentence were affirmed by the Massachusetts Supreme Judicial Court. Commonwealth v. Lovett, —— Mass. ——, ——, 372 N.E.2d 782, 788 (1978).

Having exhausted his state remedies, petitioner filed a habeas corpus petition in the United States District Court for Massachusetts. Following a hearing, his petition was denied. No. 78–1809 (D.Mass. July 30, 1979). While denying petitioner's motion for bail pending appeal, we authorized an expedited briefing schedule and argument. Order of August 27, 1979. We now reverse the district court.

## II

In Blackledge v. Perry, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102–2103, 40 L.Ed.2d 628 (1974), the Supreme Court held: "A person convicted of an offense is entitled to pursue his statutory right to a trial de novo without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." The Blackledge Court specifically based its decision upon North Carolina v. Pearce, 395 U.S. 711, 723–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and its progeny, which hold that an increased sentence upon retrial for the same charges will trigger a due process examination.[6]

The fact that the petitioner here technically may not have been indicted on a "more serious charge" is of little constitutional significance since due process principles apply to enhanced sentences as well as enhanced charges. United States v. Mallah, 503 F.2d 971, 987 (2d Cir. 1974). "Due Process not only proscribes vindictive indictments, it also protects against vindictive prosecutions." Miracle v. Estelle, 592 F.2d 1269, 1274 (5th Cir. 1979). It is the prosecutor's attempt "to retry the appellant, seeking a heavier penalty for the same acts as originally charged, [that] is inherently suspect. . . ." United States v. Preciado-Gomez, 529 F.2d 935, 939 (9th Cir. 1976) (emphasis in the original).[7]

The present appeal involves an increased sentence resulting from what may well have been the vindictive action of the prosecutor. It therefore differs from the more typical situation where the increased penalty is meted out directly and solely by

---

ants a jury trial at the first level. See Colten v. Kentucky, 407 U.S. 104, 112 n.4, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

5. Mass.Gen.Laws, ch. 266, § 15, provides:
Whoever breaks and enters a dwelling house in the night time, with the intent mentioned in the preceding section, or, having entered with such intent, breaks such dwelling house in the night time, the offender not being armed, not arming himself in such house, with a dangerous weapon, nor making an assault upon a person lawfully therein, shall be punished by imprisonment in the state prison for not more than twenty years and, if he shall have been previously convicted of any crime named in this or the preceding section, for not less than five years.

6. In Pearce, the defendant was convicted and sentenced to a prison term, which conviction was later set aside in a habeas corpus proceeding. On retrial, the defendant was again convicted, but the new sentence amounted to a longer total period of incarceration than that originally imposed. 395 U.S. at 713, 89 S.Ct. 2072.

7. This was recognized by Mr. Justice Rehnquist, the lone Blackledge dissenter, who concluded contrary to the majority that any due process violation stemmed solely from the imposition of the longer sentence, rather than additionally from the indictment on a more serious charge. 417 U.S. at 37, 94 S.Ct. 2098.

the sentencing judge. Since *Pearce* requires us to review harsher sentences resulting from the decisions of sentencing judges, it follows that we must review harsher sentences resulting from the actions of the prosecutor, the defendant's natural adversary whose job it is to obtain convictions. This is especially so since policies favoring judicial discretion and flexibility in sentencing, *see Colten v. Kentucky*, 407 U.S. 104, 112–19, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), do not apply to the prosecutor.[8] "There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise." *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978). Where, as "in the situation here the central figure is not the judge or jury, but the prosecutor . . . due process of law requires a rule analogous to that of the *Pearce* case." *Blackledge v. Perry*, 417 U.S. at 27, 94 S.Ct. at 2102. Thus we hold that the question whether a due process analysis must be employed at a trial *de novo* is to be determined not by the language of the indictment prepared by the prosecution, but by the potential for increased punishment[9] resulting from the actions of the prosecution. *Cf. United States v. Jamison*, 164 U.S.App.D.C. 300, 308, 505 F.2d 407, 415 (D.C.Cir.1974); *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976); *United States v. Andrews*, 444 F.Supp. 1238, 1240–41 (E.D.Mich.1978).

## III

Having determined that the rule against prosecutorial vindictiveness governs this appeal, we now consider whether due process has been denied to petitioner. It is settled law that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge v. Perry*, 417 U.S. at 27, 94 S.Ct. at 2102.

Petitioner contends that he has been denied due process by reason of prosecutorial vindictiveness. In *Marano v. United States*, 374 F.2d 583, 585 (1st Cir. 1967), Judge Aldrich, anticipating the arrival of *Pearce* and *Blackledge*, held that "a defendant's right of appeal must be unfettered. . . . [A defendant] likewise should not have to fear even the possibility that his exercise of his right to appeal will result in the imposition of a penalty for so doing." In similar fashion, the Supreme Court in *Pearce* emphasized that a prosecutor is "without right to . . . put a price on appeal. A defendant's exercise of a right of appeal must be free and unfettered . . . . [S]ince the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." 395 U.S. at 724, 725, 89 S.Ct. at 2080.

In *Blackledge*, the Court held that retaliatory motivation can apply as well to the prosecutor as to the judge. The Court flatly stated that every prosecutor "has a con-

---

**8.** The Commonwealth suggests that *Colten* is authority for its contention that increased sentences imposed at the *de novo* level can never engender a violation of due process. This mischaracterizes the factual basis for *Colten*, which involved a trial *de novo* on an original complaint. 407 U.S. at 108, 92 S.Ct. 1953. *See also Chaffin v. Stynchcombe*, 412 U.S. 17, 26, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). Here, in contrast, the source of the enhanced sentence was the harsher range of penalties made available to the *de novo* judge by the *prosecutorial* decision to indict. "The tremendous harm to both the individual and society which would attend a prosecutor's abuse of his discretionary authority compels us to caution that an indictment motivated by vindictiveness or retaliatory purpose on the part of the prosecution will not withstand judicial scrutiny." *United States v. Stacey*, 571 F.2d 440, 444 (8th Cir. 1978).

**9.** Such punishment, in addition to the sentence, may include various collateral consequences. *Blackledge v. Perry*, 417 U.S. at 28 n.6, 94 S.Ct. 2098, *citing* Comment, *The Collateral Consequences of a Criminal Conviction*, 23 Vand.L. Rev. 929, 955–60 (1970).

siderable stake" in discouraging appeals since each appeal expends scarce prosecutorial resources. Thus, "if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante,'" in this case by indicting the defendant in the hope of gaining an increased sentence, "the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial." 417 U.S. at 27–28, 94 S.Ct. at 2102.

■ The thrust of the decisions in *Pearce* and *Blackledge* is to safeguard the freedom of defendants to exercise their right of appeal. "The prophylactic rule is designed not only to relieve the defendant who has asserted his right from bearing the burden [of the prosecutor's] 'upping the ante' but also to prevent chilling the exercise of such rights by other defendants who must make their choices under similar circumstances in the future." *United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir. 1977). Other defendants in the shoes of the petitioner must choose between forfeiting their right to a trial *de novo* in order to assure that their sentence will not be increased or claiming their right of appeal with the accompanying risk. We thus conclude that petitioner has a significant due process interest since we are "dealing with the State's unilateral imposition of a penalty upon a defendant who [has] chosen to exercise a legal right to attack his original conviction. . . ." *Bordenkircher v. Hayes*, 434 U.S. at 362, 98 S.Ct. at 667.

■ The Commonwealth contends that since it was error to prosecute petitioner

under section 15 in the district court, its course of action is immunized from due process attack. The Commonwealth's argument was rejected by a unanimous panel of the Ninth Circuit in *United States v. DeMarco*. There, as here, "[t]he Government argue[d] that Blackledge [did] not control because . . . [the] second indictments grew out of *limits placed on the original indictment* . . . rather than any vindictiveness against the defendant." 550 F.2d at 1226 (emphasis provided). The court indicated that the prosecution had misread *Blackledge*, holding that where "[t]he factual nucleus of both indictments [is] the same . . . the progenitor of *Blackledge* . . . *North Carolina v. Pearce* . . . forb[ids] increasing a sentence upon retrial after the defendant has successfully appealed, absent new facts unrelated to. the appeal, affecting sentence." *Id.* at 1226, 1227.[10]

Petitioner should not now be penalized for any error of the Commonwealth in its fashioning of the original charge. "[I]t is the apprehension that there may be retaliatory action, not the procedural state of facts, which implicates due process rights. . . . That the government failed to [bring the grand jury indictment] prior to defendant['s] assertion of the right to [trial *de novo* ] because of . . . [a] mistake . . . does not alter the fact that the increased charge 'appears vindictive.'" *United States v. Andrews*, 444 F.Supp. at 1240, 1243. That the prosecutorial error was inadvertent "is, of course, no accepta-

---

**10.** In *Pearce*, the Supreme Court undertook an exhaustive analysis of the circumstances in which a sentence might be increased on retrial, concluding that "a more severe sentence . . . must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081. Proof of "[s]uch conduct affords evidence that the first sentence was not sufficient to serve its purpose of deterrence," *United States v. Coke*, 404 F.2d 836, 845 (2d Cir. 1968) (Friendly, J.), thus assuring that a defendant does not find "his sentence increased as a purely collateral consequence of seeking to raise something else." *Marano v. United States*, 374 F.2d 583, 585 n.2 (1st Cir. 1967).

Establishment of such conduct, such as intervening criminal activity, would demonstrate that an increased sentence has not resulted from the actions of a vindictive prosecutor but, rather, in large measure has been self-imposed.

In *Ludwig v. Massachusetts*, 427 U.S. at 631, 96 S.Ct. at 2788, the Supreme Court concluded that "[a] defendant who elects to be tried *de novo* in Massachusetts is in no different position than is a convicted defendant who successfully appeals on the basis of the trial record and gains a reversal of his conviction and a remand of his case for a new trial." In like manner, the Commonwealth may proceed no further in prosecuting petitioner than it might a successful appellant for whom a retrial has been ordered.

ble excuse whatsoever." *United States v. Ruesga-Martinez*, 534 F.2d at 1370.

In *Miracle v. Estelle*, 592 F.2d at 1273, 1276, the Fifth Circuit noted: "As in *Blackledge*, both prosecutions were directed at the same criminal act. . . . Missing from the prosecution . . . is a new decision or act of discretion by the state attorney to initiate charges against [petitioner] for distinct criminal acts." Here too the Commonwealth's legitimate interest in bringing a new prosecution for the same crime is very slight since the indictment involves the same criminal act as the complaint. The dismissal of the indictment here "entails only a minor infringement on the exercise of prosecutorial discretion." *Jackson v. Walker*, 585 F.2d 139, 144 (5th Cir. 1978). And even if it were more substantial, the Commonwealth's interest would not rise to the requisite *Pearce* level of a showing that the prosecution exercised its discretion because of conduct on the part of petitioner subsequent to his initial sentence.

## IV

We thus have before us a significant due process interest to weigh against a minor or nonexistent prosecutorial interest. Therefore, apprehension of vindictiveness by the Commonwealth in the form of an indictment is sufficient to contravene due process. Compare *Commonwealth v. Lovett*, —— Mass. at ——, 372 N.E.2d at 786.

The Court in *Blackledge* specifically conceded that there was "of course, no evidence that the prosecutor in this case acted in bad faith or maliciously," and indicated that its earlier holding in *Pearce* "was not grounded on the proposition that actual retaliatory motivation must inevitably exist." 417 U.S. at 28, 94 S.Ct. at 2102. "In effect, *Blackledge* sets up a per se rule . . . that in some situations a due process violation can be established by a showing that

defendants might have a reasonable apprehension of prosecutorial vindictiveness, without a showing that the prosecutor actually had a vindictive or retaliatory motive to deter appeals." *Jackson v. Walker*, 585 F.2d at 143.[11] "The semblance of vindictiveness that arises from the imposition of a harsher sentence the second time around must be obviated so that the proceedings do not leave the impression of unfairness to the defendant . . . and so that other defendants are not deterred from exercising rights of appeal due to apprehension of vindictiveness." *United States v. Tucker*, 581 F.2d 602, 605 (7th Cir. 1978). Otherwise the situation is too suggestive of the possibility of vindictive motive. "Due process of law requires that such a potential for vindictiveness not enter into [Massachusetts'] two-tiered appellate process." *Blackledge v. Perry*, 417 U.S. at 28, 94 S.Ct. at 2103.

The judgment is vacated and the cause remanded with instructions that the writ of habeas corpus be granted.

*It is so ordered.*

---

11. The *Jackson* court went on to note that there were "at least two reasons for such a per se rule. First, it is difficult to prove in court the actual state of mind of a prosecutor during his exercise of discretion. And second, reindictments that look vindictive, even though they are not, may still make future defendants so apprehensive about the vindictiveness of prosecutors that they will be deterred from appealing their convictions." 585 F.2d at 143.