OPINION OF THE COURT
Thomas A. Demakos, J.
Long-established constitutional doctrine imposes no limitation whatsoever upon the power of the prosecutor to retry a *898 defendant who successfully appeals his conviction (United States v Ball, 163 US 662). However, once that original conviction is set aside and the prosecutor is granted leave to re-present the matter to a new Grand Jury, can the prosecutor then go into the Grand Jury and obtain an indictment which includes an additional offense based upon the same transaction and the same evidence that was in the People’s possession prior to the finding of the first indictment? This is the issue before this court.
PROCEDURAL HISTORY
In the early morning hours of December 20, 1986, a confrontation occurred in the vicinity of New Park Pizzeria in Howard Beach, Queens County, between three black men and a large group of young white men. One black was beaten by the group and another was chased into the highway, struck by a car and killed. As a result of this incident, indictment No. 890-87 was filed and William Bollander, the defendant herein, was indicted for riot in the first degree and inciting to riot. He was tried thereunder on May 24, 1988, and, by jury verdict, he was acquitted of inciting to riot and riot in the first degree but convicted of the lesser included offense of riot in the second degree. After sentence was imposed, Bollander appealed his conviction and on December 11, 1989, the Appellate Division, Second Department, reversed the judgment of conviction, dismissed the indictment but granted the People leave to represent any appropriate charges to another Grand Jury. (People v Bollander, 156 AD2d 456.)
On February 22, 1990, indictment No. 826-90 was filed against Bollander charging him with one count of riot in the second degree and one count of discrimination, in violation of section 40-c (2) of the Civil Rights Law. He was arraigned hereunder on March 1, 1990.
The defense moved by way of a multibranch omnibus motion for dismissal of the indictment on various grounds.[1] The single issue meriting this court’s attention is that branch of the defendant’s motion seeking dismissal of the civil rights count of the indictment, pursuant to CPL article 40, upon the ground that prosecution was barred by reason of Bollander’s previous trial. Based upon the following analysis it is the decision of this court that the civil rights count is barred not *899 only on the basis of CPL article 40 but also by reason that such prosecution is unconstitutionally impermissible under the Fourteenth Amendment of the US Constitution.
APPLICATION OF THE LAW
New York’s generous version of the statutory double jeopardy defense is encompassed in CPL article 40: "Exemption from Prosecution by Reason of a Previous Prosecution”. Although CPL 40.40 is not strictly a double jeopardy provision, it is close enough in concept to share space in article 40. Specifically, CPL 40.40 deals with repeated prosecutions for different and factually distinct offenses arising out of the same criminal transaction under circumstances where no violation of double jeopardy (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 40.40, at 142-144 [1971 ed])[2] speedy trial or Statute of Limitations principles can validly be maintained. The equities, nevertheless, seem to preclude separate prosecutions (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 40.40, at 303 [1981 ed]).[3]
Criminal Procedure Law 40.40 provides:
"§ 40.40 Separate prosecution of jointly prosecutable offenses; when barred
"1. Where two or more offenses are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction, pursuant to paragraph (a) of subdivision two of section 200.20, such person may not, under circumstances prescribed in this section, be separately prosecuted for such offenses even though such separate prosecutions are not otherwise barred by any other section of this article.
"2. When (a) one of two or more joinable offenses of the kind specified in subdivision one is charged in an accusatory instrument, and (b) another is not charged therein, or in any other accusatory instrument filed in the same court, despite possession by the People of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and (c) *900 either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred.
”3. When (a) two or more of such offenses are charged in separate accusatory instruments filed in the same court, and (b) an application by the defendant for consolidation thereof for trial purposes, pursuant to subdivision five of section 200.20, or section 100.45 is improperly denied, the commencement of a trial of one such accusatory instrument bars any subsequent prosecution upon any of the other accusatory instruments with respect to any such offense.”
Historically, CPL 40.40 springs in part from Ashe v Swensen (397 US 436). There, defendant had been charged in separate counts with the armed robbery of six poker players. The defendant was tried on one count and acquitted for insufficient evidence in which the identity of the defendant was the single issue in dispute. Six weeks later the defendant was retried, this time for the robbery of another participant in the poker game. At this second trial, the prosecution had the opportunity to refine its case and the defendant was subsequently convicted. The United States Supreme Court reversed this conviction holding that the Federal rule of collateral estoppel embodied in the Fifth Amendment guarantee against double jeopardy precluded subsequent prosecution where that prosecution grew out of one criminal episode in which virtually the same evidence to be used by the prosecution was known to the prosecution prior to the commencement of that first trial.
Ashe v Swensen (supra) is at best unsatisfactory however for it bars multiple prosecution only where the first trial results in an acquittal (no collateral estoppel can emanate from a conviction) and then only in some acquittal cases. The issue of multiple prosecutions could readily have been eliminated by a simple holding that such multiple prosecutions are so fundamentally unfair as to violate the traditional due process concept. (Denzer, op. cit., McKinney’s Cons Laws of NY, Book 11A, CPL 40.40, at 142-144.)
What the Supreme Court failed to do in Ashe (supra) was eventually to be achieved by legislation, without any labels or references to doctrines such as collateral estoppel or double jeopardy. A Legislature may simply outlaw repeated prosecutions for offenses arising out of the same criminal transactions even though the offenses are so factually severable as to not *901 fall within the purview of the double jeopardy doctrine (Denzer, op. cit., McKinney’s Cons Laws of NY, Book 11A, CPL 40.40, at 142-144). The enactment of CPL 40.40 is the New York State legislative response to the problem that was so perplexing to the United States Supreme Court and other tribunals. Thus, CPL 40.40 prohibits separate prosecutions for offenses arising out of the same criminal transaction, if they had been joinable in one accusatory instrument. (People v Ruzas, 54 AD2d 1083.)
In this case, the People contend that CPL 40.40 does not apply. They argue that subdivision (2) (c) bars separate prosecution of jointly prosecutable offenses when either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty. They further contend that a trial of the existing accusatory instrument (indictment No. 826-90) has neither commenced nor been disposed of by a plea of guilty. Yet, the People concede by way of example using all of the "Howard Beach” defendants, that the third "circumstance” contained in CPL 40.40 (2) (c) would prevent the People from now bringing a civil rights charge against those defendants whose trials were commenced (and completed) or against those defendants who pleaded guilty. Conversely, the People acknowledge that had the Appellate Division upheld the riot in the second degree convictions against defendants Bollander, Farino and Povinelli, the People could not now bring a civil rights charge against them because their trials were commenced (and completed).
The People are correct in their analysis of section 40.40 (2) in that this section is inapplicable to what has occurred here, i.e., a trial of the existing accusatory instrument has not commenced. However, it is clear that the legislative intention in enacting CPL 40.40 was not to permit a prosecutor to add an additional offense once a trial had commenced on one offense involving the same conduct and the same evidence.
Notwithstanding this court’s opinion on the intention of the Legislature, it is also the decision of this court to now include the discrimination count in an indictment at retrial is in violation of the Due Process Clause of the Fourteenth Amendment of the US Constitution. This clause requires that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial” (North Carolina v Pearce, 395 US 711, 725). In Pearce, the Supreme Court emphasized that "imposition of a penalty upon the defendant for having sue *902 cessfully pursued a statutory right of appeal or collateral remedy would be * * * a violation of due process of law” (North Carolina v Pearce, supra, at 724). To assure that vindictiveness does not enter into the new sentencing determination, an increased sentence could not be imposed unless the sentencing Judge placed certain specified findings on the record justifying the increased judgment. To impose a more severe sentence in the absence of such circumstance would serve to punish a defendant for having successfully exercised his right to postjudgment review (North Carolina v Pearce, supra, at 726).
In a series of cases following Pearce (supra), the Supreme Court refined its ruling. In Colten v Kentucky (407 US 104), the Supreme Court rejected the Pearce analogy to Kentucky’s two-tiered system. Kentucky allows a defendant convicted of a misdemeanor in an inferior trial court to seek a trial de novo in a court of general jurisdiction. Similarly in Chaffin v Stynchcombe (412 US 17), the Supreme Court rejected the Pearce analogy to Georgia’s system which entrusts sentence responsibility to the jury. The defendant in Chaffin was successful in reversing his initial conviction. Upon retrial the defendant was again convicted but this time he was sentenced to a greater term than had been imposed by the initial jury. Concentrating again on the issue of vindictiveness, the Supreme Court found no violation of due process.[4]
The decisions of the Supreme Court in Pearce, Colten, and Chaffin (supra) were "premised on the apparent need to guard against vindictiveness in the resentencing process” (Chaffin v Stynchcombe, supra, at 25). However, in Blackledge v Perry (417 US 21, 27), the Supreme Court stated "that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of Vindictiveness.’ ”
In the Perry case (supra), the respondent Perry, while serving time in a North Carolina penitentiary, was charged with the misdemeanor of assault with a deadly weapon against *903 another inmate. Perry was tried without a jury in the District Court Division which has exclusive jurisdiction for the trial of misdemeanors. Perry was convicted of the misdemeanor and sentenced to six months to be served after completion of the prison term he was then serving. Perry then filed a notice of appeal. Under North Carolina law, a person convicted in the District Court has an absolute right to a trial de novo in the Superior Court. When an appeal is taken, the statutory scheme provides that the prior conviction is annulled and the prosecution and the defense begin anew in the Superior Court. After the notice of appeal was filed but prior to Perry’s appearance for trial de novo in the Superior Court, the prosecutor obtained an indictment charging Perry with the felony of assault with a deadly weapon with intent to kill. This indictment covered the same conduct for which Perry had been tried and convicted in the District Court. Perry pleaded guilty to the felony charge and the Superior Court sentenced him to a term of 5 to 7 years to be served concurrently with the prison sentence he was then serving.[5]
The Supreme Court held in Perry (supra) that the Due Process Clause of the Fourteenth Amendment of the US Constitution was violated when the prosecutor obtained an indictment for the felony of assault with a deadly weapon with intent to kill, based on the same conduct. Unlike the circumstances presented in the cases of Pearce, Colten and Chaffin (supra), the situation in Perry was that the prosecutor was the central figure, not the Judge nor the jury. In that case, the realistic likelihood of "vindictiveness” was present and it was of no bearing that there was no evidence that the prosecutor acted in bad faith or maliciously in seeking a felony indictment against Perry. The Supreme Court then stated: "The rationale of our judgment in the Pearce case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant’s exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of *904 such a retaliatory motivation on the part of the sentencing judge.’ 395 U. S., at 725.” (Blackledge v Perry, supra, at 28.)
The Supreme Court further held that:
"A person convicted of an offense is entitled to pursue his statutory right to trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.[6] * * *
"Due process of law requires that such a potential for vindictiveness must not enter into North Carolina’s two-tiered appellate process.” (Supra, at 28.)
In the case at bar, the same considerations should apply. Here the history of the Bollander matter lacks any evidence whatsoever that the Special Prosecutor has acted in bad faith or maliciously in seeking to add a discrimination charge in the new indictment. However, by adding such a charge, it does subject the defendant to increased punishment should he be convicted at a subsequent trial.. It is this fear and apprehension to which the Supreme Court referred which may unconstitutionally deter the defendant from exercising his right to appeal or to collaterally attack his first conviction. In United States v Andrews (444 F Supp 1238, 1240) the court held that "it is the apprehension that there may be retaliatory action, not the procedural state of the facts, which implicates due process rights” of a defendant.
In essence, were this court to now uphold the discrimination charge in this indictment, it would not only be affording the People two bites of the apple, but it would also be placing a chilling effect on a defendant who exercises his right to appeal. Where the evidence against the defendant is in the prosecutor’s hands, he may not — as a player in a game of chance — deal out charges one at a time. (Matter of Auer v Smith, 77 AD2d 172, 189.)
Inasmuch as this court holds that the defendant’s constitutional rights were violated under the Due Process Clause of the Fourteenth Amendment of the US Constitution which this court believes is encompassed in the spirit of CPL 40.40, the discrimination charge must be dismissed.

. Also charged under indictment 826-90 are Thomas Farino and James Povinelli who join in this omnibus motion to dismiss the indictment.

. Richard G. Denzer, formerly Executive Director of the State Commission on Revision of the Penal Law and Criminal Code, was the architect and chief draftsman of both the Criminal Procedure Law and the revised Penal Law of 1965.

. Indeed, Joseph W. Bellacosa refers to this section as a "Chancellor’s” equity provision to bar unfair practice in this tricky area.

. See also, Bordenkircher v Hayes, 434 US 357; United States v Goodwin, 457 US 368; Wasman v United States, 468 US 559 (where the Supreme Court on the issue of vindictiveness found no violation of due process); see also, People v Miller, 65 NY2d 502 (where the New York Court of Appeals held that a heavier sentence following defendant’s retrial after his successful appeal is not a per se violation of due process but such increased sentence may be justified by the existence of a legitimate and reasonable basis).

. The sentence Perry was then serving was 5 to 7 years and although the Superior Court decreed that the new sentence of 5 to 7 years was to run concurrently, under applicable North Carolina law the 5-to-7-year assault sentence did not commence until the date of the guilty plea, and by that time he had already served 17 months.

. The majority opinion of the Supreme Court in Blackledge v Perry (417 US 21, 31, n 8) stated in a footnote that their holding is not that Perry was denied due process by the length of the sentence imposed by the Superior Court but rather by the very institution of the felony indictment against him.