# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 14-1218


**STATE OF LOUISIANA**

**VERSUS**

**CHRISTOPHER J. BROWN**



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 54782-K
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**********

## DAVID KENT SAVOIE
## JUDGE

**********

Court composed of John D. Saunders, Shannon J. Gremillion, and David Kent Savoie, Judges.


**AFFIRMED.**

**Keith A. Stutes**
**District Attorney, 15th JDC**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**J.N. Prather, Jr.**
**Assistant District Attorney**
**100 North State Street, Suite 215**
**Abbeville, LA 70501**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward J. Marquet**
**Louisiana Appellant Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Christopher J. Brown**

**SAVOIE, Judge.**

## <u>MEMORANDUM</u>

Defendant, Christopher J. Brown, was charged on December 22, 2011, with the attempted forcible rape of L.S.[1] in violation of La.R.S. 14:42.1 and 14:27. Defendant was arraigned and pled not guilty on January 19, 2012.

On September 26, 2012, Defendant's attorney filed a Motion for Appointment of Sanity Commission, which the trial court granted. Both members of the commission testified that Defendant understood the nature of the charges and was competent to stand trial, and the court so found.

Trial commenced on February 11, 2014, and Defendant was found guilty of attempted forcible rape on February 12, 2014. On July 31, 2014, Defendant was sentenced to serve twenty years at hard labor, with ten years suspended subject to five years supervised probation with special conditions, and with the first year of Defendant's sentence to be served without benefit of probation, parole, or suspension of sentence.

On August 11, 2014, on the trial court's own motion, Defendant was resentenced to fifteen years at hard labor, without benefit of parole, probation, or suspension of sentence. Attempted forcible rape is a crime of violence, and is, therefore, not subject to a suspended sentence or probation. *See* La.Code Crim.P. art. 893(A) and La.R.S. 14:2(B)(10). The court resentenced Defendant to correct this error in the original sentence. Defendant then timely appealed his conviction and sentence. For the following reasons, Defendant's conviction and sentence are affirmed.

---

[1] The victim is referenced by use of initials in accordance with La.R.S. 46:1844(W).

## FACTS

The State began by calling as its first witness, the victim, L.S, who is a thirteen year-old girl. She testified that after school and algebra team practice, she went to the public library, dropped her things at a table, and went to use the restroom. She further testified that, as she went to wash her hands, a young man entered the restroom behind her. When she tried to tell him he was in the wrong restroom, he covered her mouth to prevent her from screaming, grabbed her, and pushed her to the floor.

She testified that, while she was on the ground, her attacker was bent over her attempting to cover her mouth. According to the victim, she then pushed his hand away and managed to kick him in the head, at which point she left the restroom as her attacker recovered.

L.S. stated that, after she exited the restroom, Mr. Edward Poche asked her what was wrong. She pointed to the restroom where her attacker had just exited and saw him attempting to leave through a side door. She stated that Mr. Poche stopped her attacker and that the librarians spoke with her and called the police. She then identified Defendant as the individual who attacked her at the library. On cross-examination, L.S. stated that Defendant did not rape her, have sex with her, or kiss her.

The State then called Mr. Edward Poche, who testified that he was at the library on the date of the attack in order to pick up a book to bring with him to work that night. He testified that while looking for a book, he heard a scream which he initially thought was simply children playing in the restroom. When the screams continued, he stopped his book search and approached the restrooms.

Mr. Poche testified that, as he was approaching the restrooms, he saw L.S. back out of the restroom and she looked like she was on the verge of tears. The Defendant then came out of the same restroom. Mr. Poche testified that L.S. approached him, started crying, and told him Defendant had attacked her.

Mr. Poche testified that Defendant was heading towards one of the exits and he yelled at him to stop. He testified that Defendant stopped, but did not want to come towards Mr. Poche or L.S. He testified that, as he, L.S., Defendant, and a librarian were headed towards the front of the library, Defendant kept saying that he was sorry. He then identified Defendant. On cross-examination, Mr. Poche stated that L.S. was not in any state of undress when she exited the restroom; she was neither bloody nor bruised, and that Defendant waited for the police to arrive.

The State also called Ms. Lela Thibodeaux, a library employee who was working on the day of the attack. She testified that she was in the back of the library and heard a yell, but did not know what had happened until she heard her supervisor speaking to the police on the phone. She testified on cross-examination that she saw Defendant at the computers when she went to the closet in the back, prior to the incident. She also testified that L.S. was not bloody or bruised, but was crying, and that Defendant remained at the library until police arrived.

The State called to the stand Ms. Linda Leonard, another library employee who was working on the day of the incident. She testified that she was working at her desk in the front of the library, heard a commotion in the back of the library, and saw L.S., Mr. Poche, and Defendant coming from the restroom area. After speaking to Mr. Poche, she called the Kaplan Police Department. She testified that her desk was near the main exit and that the exit by the restroom is an emergency

3

exit. On cross-examination, she testified that Defendant remained at the library until the police arrived.

The State then called Officer Jacob Primeaux, formerly of the Kaplan Police Department. He testified that he was the responding officer when the library called the police. He testified that after speaking to the librarians, he called the detectives, and Lieutenant Seth Comeaux and Detective Josh Hardy arrived. He further testified that he arrested the suspect and transported him to the police department. He also stated that during a search incident to arrest, he found an unopened condom in the suspect's pocket and identified Defendant as the suspect.

Officer Primeaux testified that as he was booking Defendant into the jail, he noticed that Defendant's pants were unzipped and that his belt was undone. He stated that he had not seen Defendant adjust his pants prior to that point. On cross-examination, Officer Primeaux confirmed that the condom found in Defendant's pocket was unopened, and that he noticed the Defendant's pants being unzipped about two or three minutes after leaving the library.

The State next called Officer Seth Comeaux, who was formerly a lieutenant that oversaw investigations with the Kaplan Police Department. Officer Comeaux identified Defendant and testified that, when he arrived on the scene with Detective Hardy, they read Defendant his *Miranda* rights and began to question him. He further testified that Defendant indicated he understood his rights, did not ask for an attorney, and agreed to answer questions without an attorney present.

Over objection, Officer Comeaux then testified that, after Defendant was read his rights and agreed to answer questions without an attorney present, he told Officer Comeaux that he went into the restroom to kiss a girl. He further stated

4

that Defendant told him he had attempted to kiss the girl in the restroom, but that she had screamed and ran.

Officer Comeaux testified that he then arrested Defendant for attempted forcible rape, took him to the Kaplan Police Department and interviewed him for a second time about forty minutes after Defendant was originally read his rights. Officer Comeaux stated that he and Defendant spoke further in Officer Comeaux's office.

Officer Comeaux testified that, during the unrecorded interview in his office, Defendant told him he had gone into the restroom because he was trying to have sex with the girl. He further stated that Defendant told him "he wanted to be in control of the situation," and that L.S. "looked something like an angel."

On cross-examination, Officer Comeaux confirmed that the second interview took place with no one but himself and Defendant in the room. At that point, the State rested its case. Defendant informed the court of his decision not to testify or call any witnesses.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note one potential error patent, however, for the reasons discussed in assignment of error number one, this error has no merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant contends the evidence was insufficient to support his conviction. Because this assignment of error relates to the sufficiency of the evidence presented, we will address it first. *State v. Hearold*, 603 So.2d 731 (La.1992).

The analysis for such claims is well settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Specific intent to commit a crime is an element of an attempted offense. LSA-R.S. 14:27. A conviction of an attempted offense must rest upon the sufficient proof that the offender actually desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. *State v. Hunter*, 454 So.2d 131 (La.App. 2d Cir.), writ denied, 456 So.2d 1018 (La.1984). Therefore, in order to commit attempted forcible rape, the offender must actively desire to commit rape by preventing the victim from resisting the act by force or threats where the victim may reasonably believe that such resistance would not prevent the rape. *State v. Magee*, 491 So.2d 454 (La.App 1st Cir.1986) Where the offender has the requisite intent to commit a rape and does an act in furtherance of his goal, he has committed the offense of attempted forcible rape even if his victim successfully repels the threat or force. *State v. Parish*, 405 So.2d 1080 (La. 1981); *State v. Magee*, supra.

Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. *State v. Graham*, 420 So.2d 1126 (La.1982); *State v. McDermitt*, 406 So.2d 195 (La.1981). Specific intent is a legal conclusion ultimately to be resolved by the trier of fact. *State v. Guidry*, 476 So.2d 500 (La.App. 1st Cir. 1985), writ denied, 480 So.2d 739 (La.1986).

*State v. Volkmann*, 539 So.2d 1279, 1281 (La.App. 3 Cir. 1989).

Defendant cites a number of cases in order to argue that his actions "were not that of an attempted rapist because nothing [he] did resembles in any way actions consistent with attempted rape." However, the argument is without merit. As previously stated by this court, a conviction for attempted forcible rape requires only specific intent to commit rape, and an act performed in furtherance of that intent. *Id*. In the case *sub judice*, the jury heard testimony that Defendant specifically told an officer that his reason for going into the restroom was to have sex with the victim. The jury also heard testimony from the victim that Defendant threw her to the floor and tried to stop her from screaming for help.

In the instant case, the evidence supports the jury's determination that Defendant possessed the specific intent to commit the offense and performed actions in furtherance of his goal. Defendant accosted a thirteen-year-old girl in the restroom of a public library, physically threw her to the ground, and attempted to cover her mouth to prevent her from screaming. After being read his *Miranda* rights and choosing to speak to police without an attorney present, Defendant admitted to Officer Comeaux that he followed the victim into the restroom to have sex with her. Fortunately for the victim, she was able to fend off Defendant's attack, escape from the restroom, and get help.

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Defendant possessed the specific intent to forcibly rape the victim and performed acts directly in furtherance of this goal. As previously stated by this court: "The fact that the would-be victim successfully repelled [Defendant]'s advances does not negate a finding of [Defendant]'s willingness and intent to force her to have non-consensual sexual intercourse through force or threats of physical violence." *Volkmann*, 539 So.2d at 1282. The

evidence clearly supports Defendant's conviction for attempted forcible rape, thus, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 1

In Defendant's only other assignment of error, he complains that "[t]he trial court imposed an illegal sentence at re-sentencing." He argues that because the trial court altered his sentence without giving any objective information regarding Defendant's conduct after the original sentencing that would justify a change, the change was illegal, citing *State v. Soco*, 508 So.2d 915 (La.App. 4 Cir. 1987).

On July 31, 2014, after taking testimony from a number of witnesses, the trial court imposed the following sentence:

> I am going to put you on probation for a while after your release from incarceration because that's the only way to try and ensure your compliance with your medication and with adhering to the law when you're out. I'm going to order that you serve twenty years at hard labor. I'm going to suspend ten years of that. The first year of which would be without benefit of probation, parole, or suspension of sentence as per law. I'm going to strongly recommend that you receive sex offender and mental health treatment during your incarceration. And upon your release from incarceration I'm going to order that you be placed on supervised probation for five years and that special conditions of your probation include but are not limited to that you seek further mental health treatment, particularly pertaining to sex offenses and that you follow any recommended treatment, that you take any medications that are recommended by any qualified mental health professional. And the other is that you have no contact whatsoever with the victim or her family.

After being informed by the Department of Corrections that the above sentence was an illegal sentence, on August 11, 2014, the trial court resentenced Defendant to fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant now argues that the trial court should be forced to reinstate the original sentence.

La.Code Crim.P. art. 893(A) specifically provides that "[t]he court shall not suspend the sentence of a conviction for a crime of violence as defined in R.S. 14:2(B)(1), (2), (3), (4), (5), (9), (10),. . . ." Further, La.R.S. 14:2(B) states that [t]he following enumerated offenses and attempts to commit any of them are included as "crimes of violence":

. . . .

(10) Forcible rape

. . . .

Because the trial court attempted to suspend part of the twenty-year sentence given to Defendant on July 31, 2014, that sentence was an illegal sentence, as it is prohibited by La.Code Crim.P. art. 893(A). Louisiana Code of Criminal Procedure Article 882(A) states that "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." Here the trial court, upon realizing that it had imposed an illegal sentence, performed exactly as allowed by La.Code Crim.P. art. 882(A) and resentenced Defendant to a legal sentence.

> If the correction of the illegally lenient sentence results in a harsher sentence than that originally imposed as a result of adding parole ineligibility, then the record should reflect consideration by the resentencing judge of the intent of the judge who imposed the original sentence, whether it be the same judge or another judge. If, at the time of imposing the original sentence, the intent of the judge was that the years be served without benefit of parole, resentencing to the same term of years without benefit of parole is appropriate. If the intent was to allow parole eligibility, then the resentencing judge may impose a sentence of a lesser term of years without benefit of parole to reflect that intent. If the intent of the judge who imposed the original sentence cannot be determined, then the resentencing judge should make an independent determination of an appropriate sentence, not to exceed the term of years originally imposed, to be served without benefit of parole. *State ex rel. Jackson v. Smith*, 578 So.2d 1150 (La.1991); *State v. Washington*, 578 So.2d 1150 (La.1991); and *State v. Desdunes*, 579 So.2d 452 (La.1991).

*State v. Bonier*, 583 So.2d 501, 502-03 (La.App. 3 Cir. 1991). *See also State v. Bertrand*, 04-1496 (La.App. 4 Cir. 12/15/04), 891 So.2d 752 (finding that when an illegal sentence is corrected, a more onerous sentence is not necessarily a violation of the defendant's constitutional rights).

> It is well settled that "the chilling [effect on] appeals does not in and of itself offend due process." *United States v. Henry*, 709 F.2d 298, 316 n. 26 (5th Cir.1983). More specifically, due process is not offended by all possibilities of increased punishment after appeal, only by those which involve "actual retaliatory motivation" or "pose a realistic likelihood of 'vindictiveness'." *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Henry*, 709 F.2d at 315–16. It is readily apparent that a significant distinction may be drawn between vindictiveness which, after appeal, increases a defendant's sentencing exposure or increases a legal sentence, and the pro forma correction of an illegal sentence. When an illegal sentence is corrected, even though the corrected sentence is more onerous, there is no violation of the defendant's constitutional rights. *Llerena v. United States*, 508 F.2d 78 (5th Cir.1975); *Reyes v. United States*, 262 F.2d 801, 802 (5th Cir.1959). Simply stated, when a court complies with a nondiscretionary sentencing requirement, i.e., a mandatory minimum term or special parole provision(s), no due process violation is implicated because neither actual retaliation nor vindictiveness exists.

*State v. Williams*, 00-1725, pp. 9-10 (La. 11/28/01), 800 So.2d 790, 798.

During resentencing, the trial court stated that it had originally intended for Defendant to be released after serving part of his twenty-year sentence, but because the law would not allow that, Defendant was instead sentenced to a lower term of years, but without benefit of parole, probation, or suspension of sentence. Thus, the trial court's decision to resentence Defendant from twenty years with ten years suspended and probation to fifteen years without benefit was allowed by both La.Code Crim.P. art. 882(A) and this court's prior ruling in *Bonier*. Additionally, the supreme court's decision in *Williams* clearly recognizes that, where an illegal sentence is corrected, a defendant's rights are not violated, even if the sentence is

10

more onerous, unless there is a showing of vindictiveness. As such, Defendant's claim is without merit.

## **DECREE**

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**